[Cite as *Barrientos v. Barrientos*, 2013-Ohio-424.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

JOYCE A. BARRIENTOS,

    PLAINTIFF-APPELLEE,           CASE NO.  5-12-13

    v.

GUILLERMO M. BARRIENTOS,        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2007-DR-426

Judgment Affirmed in Part, Reversed in Part and Cause Remanded

Date of Decision:   February 11, 2013

APPEARANCES:

    *Joseph A. Benavidez*  for Appellant

    *Kelton K. Smith*  for Appellee

Case No. 5-12-13

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Guillermo M. Barrientos ("Guillermo"), appeals from the judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, granting a divorce from Plaintiff-Appellee, Joyce A. Barrientos ("Joyce"). On appeal, Guillermo contends that the trial court erred in awarding Joyce property that he contends was his separate property from a personal injury settlement and that the trial court abused its discretion in its determination of the amount and duration of spousal support he was ordered to pay Joyce. For the reasons set forth below, the judgment is affirmed in part and reversed in part.

{¶2} On August 22, 2000, Guillermo was severely injured in an industrial explosion and was hospitalized for nearly a month with severe burns and rotator cuff injuries. Joyce and Guillermo had been living together prior to the accident. When he was discharged from the hospital, he returned home and Joyce provided for his care. The couple married shortly thereafter on October 20, 2000. Both parties were in their forties at the time of the marriage and no children were born as issue of this marriage, although both had children from their previous marriages.

{¶3} Joyce continued to care for Guillermo through a lengthy convalescence. Joyce testified that the doctors had wanted to place Guillermo in a

-2-

rehabilitation center for six months to a year. She knew that he would not be able to adjust to that, so she learned how to provide the nursing care that was needed to care for his burns and his skin grafts at home. (Tr. pp. 17-19) The extent of Guillermo's injuries prevented him from returning to work.

{¶4} In October of 2006, a settlement agreement was finally reached concerning the accident. The parties stipulated that Joyce was also a party to the settlement agreement, as well as Guillermo's minor children. (Trial Tr. 11/13/08, pp. 8-9) Guillermo received two checks in the amounts of $794,784.80 and approximately $98,000. There was also a separately funded monthly annuity payment of $2,300 from MetLife as part of the settlement. Guillermo also receives a $1,400 bi-weekly payment from the Bureau of Workers Compensation ("BWC"), approximately $1,400 monthly Social Security disability payments, plus $471 monthly in what he described as SSI. (Mag. Dec., p. 3) After receiving the settlement, the couple put some of the money into another annuity at Chase Bank; they used some of the money to help their relatives; and they also decided that they were going to purchase investment property to fix up and rent out. (Tr. 24) They purchased four real estate properties and they also purchased several vehicles that were used by the parties and their family members.

{¶5} On December 12, 2007, Joyce filed for divorce. A hearing was held on November 13, 2008. The main issues before the trial court concerned the

division of the property. Joyce had also requested spousal support in her complaint. She testified that she was not employable due to her medical condition (manic-depressive disorder) and she had no separate assets of her own. (Tr. 22-24)

{¶6} The magistrate issued a decision on December 17, 2008, finding that a divorce should be granted on the basis of incompatibility. The magistrate recommended that Guillermo be awarded the marital home (valued at $79,640) and the vehicle that he had owned prior to the marriage (valued at $2,950), both of which were classified as his separate property.

{¶7} The magistrate acknowledged that the other assets owned by the couple were obtained as a result of the settlement monies obtained from Guillermo's accident, but found that Guillermo had not sustained his burden of demonstrating what funds were due to his personal injuries and what funds were paid as compensation for lost wages, expense reimbursement, or consortium. (Mag. Dec., p. 6) The parties had stipulated that Joyce, Guillermo, and Guillermo's minor children were parties to the settlement agreement. The magistrate also found that the parties had co-mingled the funds that had been received with marital income, and that it was not possible to completely separate the settlement funds from marital funds. (*Id.*) Therefore, the magistrate found that the parties had the following assets, which were categorized as marital property:

**{¶8}** The parties' marital real estate:

| | |
|---|---|
| 306 Center St. | $ 73,870.00 |
| 430 Findlay St. | $ 48,640.00 |
| 1332 Vincent St. | $ 76,510.00 |
| 224 Jefferson St. | $ 23,680.00 |
| Sub-Total (real estate): | $222,700.00 |

**{¶9}** The parties' vehicles:

| | |
|---|---|
| 1998 Chevy Tahoe | $ 4,260.00 |
| 2001 Jaguar Sedan | $ 8,735.00 |
| 1996 Dodge Ram | $ 1.725.00 |
| 1998 Dodge Durango | $ 3,495.00 |
| 2003 GMC Sierra | $ 5,810.00 |
| 2000 Mitsubishi Mirage | $ 2,650.00 |
| 1995 Jeep Cherokee | $ 1,225.00 |
| Yamaha motorcycle | $ 8,500.00 |
| Sub-Total (vehicles): | $ 36,400.00 |

**{¶10}** The parties' bank accounts:

| | |
|---|---|
| Credit Union joint savings | $ 1,572.07 |
| Credit Union checking | $ 4,372.82 |
| Chase Bank savings | $ 83,141.88 |
| Chase Bank checking | $ 1,614.28 |
| Chase Bank savings | $ 2,065.80 |
| Chase Bank annuity[1] | $305,379.13 |
| Sub-Total (accounts): | $398,145.98 |

**{¶11}** After reviewing and considering all of the relevant statutory factors to provide for an equitable division of marital property, the magistrate recommended that a division of 25% to Joyce and 75% to Guillermo was "equitable under these unique circumstances." The magistrate proposed that Joyce be awarded the Findlay Street and Jefferson Street real estate (she currently resides

---

[1] This annuity was established shortly after the settlement monies were received and is separate and different from the MetLife annuity; it has not yet matured. The MetLife annuity was established as a result of the settlement and is currently providing Guillermo with a monthly payment of $2,300.

in the Jefferson Street home), the Tahoe and the Jaguar (she testified that the Jaguar was a birthday gift from Guillermo), and the $83,141.88 Chase savings account. The total value of Joyce's property was approximately $168,456. Guillermo was awarded the $305,379 Chase annuity, the Center Street and Vincent Street properties, and the remaining vehicles and savings accounts, for a total of $488,788 from the marital property division. He also was to retain the income he received from the MetLife annuity and other sources (SSI and BWC).

{¶12} Then, after again considering all of the relevant statutory factors, the magistrate found that Joyce was entitled to receive spousal support. The magistrate recommended that spousal support should be set at $10,400 annually ($866 monthly) for a period of eleven years, until Joyce turned 62 and would be eligible to receive Social Security. The trial court noted that $10,400 was the federal poverty level for an individual for 2008, citing to the Federal Register, Vol. 73, No. 15, January 23, 2008, at 3971. The magistrate stated that the recommended amount of spousal support would provide Joyce with "basic sustenance leaving any supplementation beyond poverty level to her rental or interest income." The trial court retained jurisdiction, stating that spousal support would be modifiable in the event of Joyce's employment or receipt of other income, or in the event of a significant reduction in Guillermo's monthly income. It would terminate upon Joyce's remarriage or the death of either party.

{¶13} Guillermo filed objections to the Magistrate's Decision. On February 17, 2011, the trial court overruled the objections and the final Judgment Entry was filed April 14, 2011. Guillermo appealed, and this Court reversed and remanded due to the fact that it was unclear as to whether the trial court had conducted a de novo review of the Magistrate's Decision and independently evaluated the evidence and applied the law. *See Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, ¶ 7 (3d.Dist.).

{¶14} Upon remand, the trial court reviewed the evidence utilizing the proper standard of review and again overruled all objections to the Magistrate's Decision. The trial court issued a Judgment Entry of Decree of Divorce on February 15, 2012, adopting all stipulated facts entered into by the parties and the findings of fact and conclusions of law as set forth in the Magistrate's Decision of December 17, 2008.

{¶15} It is from this judgment that Guillermo now appeals, raising the following three assignments of error for our review.

**First Assignment of Error**

**The trial court's characterization of any portion of the settlement proceeds as marital property was against the manifest weight of the evidence because the settlement proceeds were wholly separate property and were not comingled with the marital property.**

**Second Assignment of Error**

**The magistrate improperly used the federal poverty level to establish the amount of trial support when neither party presented it as a relevant standard.**

**Third Assignment of Error**

**The duration of spousal support awarded by the trial court is unsupported by both case law and the evidence presented.**

*First Assignment of Error – Division of Property*

{¶16} In his first assignment of error, Guillermo, contends that the trial court erred when it classified the settlement proceeds as marital property. He contends that the settlement monies were for his personal injuries, sustained prior to the marriage, and were his separate property not subject to division, according to R.C. 3105.171(A)(6)(a)(vi). He also challenges the Magistrate's findings that the separate settlement monies were co-mingled and untraceable.

{¶17} Upon the application of either party in an action for divorce, the trial court must determine what constitutes marital property and what constitutes separate property, divide the marital property equitably between the parties, and disburse a spouse's separate property to that spouse. R.C. 3105.171. The Ohio Revised Code requires that a trial court divide the marital property equally unless an equal division would be inequitable, in which case "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). Marital property

includes property that is currently owned by either or both spouses and that was acquired by either or both of the spouses during the marriage. *See* R.C. 3105.171(A)(3)(a).

{¶18} Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009–Ohio–6864, ¶ 15 (3d Dist.). The definition of separate property includes "all real and personal property and any interest in real or personal property that is found by the court" to belong to one of the enumerated categories in the statute, including "[c]ompensation to a spouse for the spouse's personal injury, *except for loss of marital earnings and compensation for expenses paid from marital assets*." (Emphasis added.) R.C. 3105.171(A)(6)(a)(vi). Also, if any portion of a personal injury award or settlement is attributable to the "uninjured" spouse's loss of consortium claim, then that portion of the award is the separate property of the "uninjured" spouse. *Mayer v. Mayer*, 5th Dist. No.2010–CA–277, 2011–Ohio–1884, ¶ 8.

{¶19} Trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding." *Cherry v. Cherry*, 66 Ohio St.2d 348, paragraph two of the syllabus; *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 1994-Ohio-30. A reviewing court will not disturb the trial court's decision unless it finds that the trial court abused its discretion. *Holcomb v. Holcomb*, 44 Ohio

St.3d 128, 131 (1989). An abuse of discretion is more than an error in judgment; it signifies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Timberlake v. Timberlake*, 192 Ohio App.3d 15, 2011–Ohio–38, ¶ 9 (3d Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Bruce v. Bruce*, 3d Dist. No. 9–10–57, 2012–Ohio–45, ¶ 13, citing *State v. Boles*, 187 Ohio App.3d 345, 2010–Ohio–278, ¶ 17–18 (2d Dist.). When applying an abuse-of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Blakemore*; *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶20} Although appellate courts review a trial court's division of property under an abuse of discretion standard, a trial court's characterization of property as separate or marital is a mixed question of law and fact, which must be supported by sufficient credible evidence. *Kelly v. Kelly*, 111 Ohio App.3d 641, 642 (1st Dist.1996). The factual findings of a trial court relating to its classification of property as marital or separate are reviewed to determine whether they are against the manifest weight of the evidence and will not be reversed if they are supported by some competent and credible evidence. *Eggeman v. Eggeman*, 3d Dist. No. 2-04-06, 2004-Ohio-6050, ¶ 14, citing *DeWitt v. DeWitt*, 3d Dist. No. 9-02-42, 2003-Ohio-851, ¶ 10. In determining whether competent, credible evidence exists, "[a]

reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Barkley v. Barkley*, 119 Ohio App.3d 155, 159 (4th Dist.1997), citing *In re Jane Doe I*, 57 Ohio St.3d 135 (1991).

{¶21} In this case, it is clear that some of the settlement monies were meant to compensate Guillermo for his personal injuries and would be his separate property. However, the trial court found that Guillermo failed to sustain his burden of demonstrating what amount of the settlement was attributable to Guillermo's "personal injury" as opposed to "loss of marital earnings" and any reimbursement "for expenses paid from marital assets". Based on the evidence in the record and the stipulations, the trial court found that the evidence demonstrated that a portion of the settlement monies were meant to reimburse the parties for loss of marital earnings, compensation for expenses paid from marital assets, and to compensate Joyce for her loss of consortium. In attempting to classify the funds, the magistrate stated.

> If the funds received during the marriage do not fit that category [of compensation for personal injury], then they do not constitute separate property. The magistrate can only assume that some portion of the proceeds fits that category; however, there was no evidence of the details of the additional funded income stream, which also constitutes part of the settlement proceeds. Thus, the

amounts paid into that fund could constitute the portion related to the personal injuries. The defendant was earning approximately $60,000 at the time of the injury, and the lost earnings over the course of the marriage could have accounted for at least $480,000 of the proceeds ($60,000 x 8 years of marriage). The parties stipulated that [Joyce], [Guillermo], and [Guillermo's] minor children were all parties to the settlement agreement in October 2006. The name on the check does not control the determination of the property, nor does the deposit into the defendant's individual account. The determinative factor when dealing with personal injury settlements is the accounting for the categories of damages. In the absence of some evidence of the distinctions, the magistrate must conclude that [Guillermo] failed to meet his burden of proof that the monies received were solely for his personal injury.

(Mag. Dec. 12/17/08 p. 6)

{¶22} The trial court's conclusions were consistent with those found by the Ninth District Court of Appeals in a similar case where the appellate court found that "the trial court's inability to determine what amount of those proceeds was payment for loss of wages and [the wife's] loss of consortium as opposed to compensation for [the husband's] permanent injuries, pain and suffering, and medical expenses was fatal to his claim of separate property." *Modon v. Modon*, 115 Ohio App.3d 810, 815 (9th Dist. 1996). *See, also*, *Cox v. Cox*, 12th Dist. No. CA98-05-007 (Feb. 16, 1999)

{¶23} Although the compensation for Guillermo's personal injuries would be presumed to be his separate property, he failed to provide any evidence as to how much of the settlement was attributable to his personal injuries. The trial court repeatedly gave him opportunities and even delayed the trial when it granted

Guillermo a continuance to support his contention that the money had "nothing to do with Joyce." (Hearing Tr. 10/21/08, p. 8)[2] However, on the date of the trial, the only specific evidence before the trial court was the parties' stipulation that both Joyce and Guillermo were parties to the settlement agreement. Neither party was able to provide specific evidence as to what part or how much of the settlement proceeds were intended for what purposes.

{¶24} Furthermore, the trial court found that Guillermo comingled the settlement proceeds with the BWC and SSI benefits that were received during the marriage. He also borrowed funds during the marriage to purchase real estate, and then used settlement proceeds to pay back that marital debt. The funds from marital income received during the marriage went into accounts along with settlement proceeds; the parties purchased vehicles and real estate putting them in both Guillermo's name and Joyce's name; Joyce had access to funds to purchase real estate at auction or otherwise; and they generally treated all of the money as a joint pool of funds for purchases, including assisting both parties' families. (Mag. Dec. p. 7) "Thus, even if [Guillermo] could establish what portion of the funds were attributable solely to his injury, the magistrate would have to conclude that

---

[2] Discussions at the hearing indicated that Guillermo had not provided discovery to the Plaintiff's attorney in response to their motion to compel, and his own attorney complained that he failed to communicate with her, he did not return her phone calls, nor did he provide her with the paperwork she needed so that she could represent him in court. (Tr. p. 12) The trial court reprimanded Guillermo, but did grant a continuance.

-13-

[Guillermo] failed to trace the current assets to the separate portion of the settlement proceeds." (*Id.*)

{¶25} The facts in this case are complicated and somewhat unique, and the trial court's decision was made more difficult by the lack of cooperation and/or inability of the parties to provide more definitive evidence. The trial court has worked closely with the parties in this case for many years, as this divorce has been pending since 2007. We find that the division of property was decided after a lengthy and detailed review that analyzed all of the evidence that was before the court in view of the statutory requirements and case law. Furthermore, besides the enumerated factors, the trial court considered "any other factor[s] that the court expressly finds to be relevant and equitable," pursuant to R.C. 3105.171(F)(9). The trial court acknowledged that the parties' "financial windfall" was the result of Guillermo's unfortunate accident, and that Joyce had little or no assets at the commencement of the marriage. Therefore, the magistrate found that assigning Guillermo 75% of the property, in addition to his clearly established separate property, as well as the MetLife annuity, was an equitable division in this case.

{¶26} It is not our position to substitute our judgment for that of the trial court. *See Daniel v. Daniel*, 3d Dist. No. 10-11-09, 2012-Ohio-5129, ¶ 21. The trial court's decision was supported by the evidence that was discernible from the record and analyzed according to the law, with careful consideration as to what

would be equitable under these circumstances. Therefore, we cannot say that the trial court's characterization of the property was against the manifest weight of the evidence, nor that the court abused its discretion in the division of the property. Guillermo's first assignment of error is overruled.

*Second and Third Assignments of Error – Spousal Support*

{¶27} Both of these assignments of error pertain to spousal support so we will address them together. Guillermo objects to both the amount and the duration of spousal support that was ordered by the trial court. He contends that Joyce failed to demonstrate a need for support, and that the trial court's selection of the federal poverty level to determine the amount of support payable was an arbitrary and unreasonable standard. He also asserts that awarding spousal support for eleven years, a period that was longer than the eight-year marriage, was unreasonable.

{¶28} Spousal support is defined in R.C. 3105.18(A) as "any payment or payments * * * that is both for sustenance and for support of the spouse or former spouse." Trial courts are granted broad discretion concerning awards of spousal support, and the a court's decision will not be reversed on appeal absent an abuse of that discretion. *Tremaine v. Tremaine*, 111 Ohio App.3d 703 (2d Dist.1996); *Siekfer v. Siekfer*, 3d Dist. No. 12–06–04, 2006–Ohio–5154, ¶ 15. *Accord*, *Kunkle v. Kunkle*, 51 Ohio St.3d 64 (1990). Although a trial court has broad discretion in

fashioning an equitable spousal support award based upon the facts and circumstances of each case, this discretion is not unlimited. *Kunkle* at 67; *Cherry v. Cherry*, 66 Ohio St.2d at 355. Thus, in reviewing a spousal support award on appeal, the appellate court must "look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably." *Kunkle* at 67.

{¶29} R.C. 3105.18 governs the trial court's award of spousal support and requires the court to consider fourteen factors set forth in R.C. 3105.18(C)(1) when determining whether spousal support is appropriate and reasonable, and when determining the nature, amount, terms of payment, and duration of the support. *Strasburg v. Strasburg*, 3d Dist. No. 2–10–12, 2010–Ohio–3672, ¶ 26; *Kunkle, supra.* The factors are "(a) the parties' income, (b) the parties' earning abilities, (c) the parties' ages and health, (d) the parties' retirement benefits, (e) the duration of the marriage, (f) the responsibilities of a party as custodian of a minor child, (g) the standard of living established during the marriage, (h) the parties' education, (i) the parties' assets and liabilities, (j) each party's contribution to the other's education and career, (k) the needs of the party seeking support to acquire work skills/education, (l) the tax consequences, (m) a party's diminished earning capacity as a result of his or her marital responsibilities, (n) any other factor the court finds relevant and equitable." *Hawley v. Hawley*, 11th Dist. No.2003-P-

0096, 2004-Ohio-3189, ¶ 14, *citing*, R.C. 3105.18(C)(1). While a trial court may consider any factor it considers relevant, including need, a party's "need" is not specifically one of the enumerated factors set forth in R.C. 3105.18, nor is it the primary standard against which to evaluate the factors. *Muckensturm v. Muckensturm*, 3d Dist. No. 5-11-38, 2012-Ohio-3062, ¶ 20.

**{¶30}** The record demonstrates that the magistrate did do a detailed analysis of each of the factors in R.C. 3105.18 as they pertained to the facts in this case. (Mag. Dec. pp. 10-12) The trial court found that there were numerous factors indicating that spousal support was reasonable and appropriate, including Joyce's age (then 51), her limited education, her lack of significant work experience and employment skills, her lack of retirement funds, and her mental health condition. (*Id.*) The trial court acknowledged that Joyce did not provide any information concerning her basic expenses and needs, but awarded her spousal support based upon the federal poverty level to provide her with basic sustenance, leaving any supplementation beyond poverty level to her rental or interest income. (*Id.* at 12) Even though the marriage was only of eight years duration, the trial court ordered that spousal support should be paid for a period of eleven years, until Joyce reached age 62 and would be eligible for Social Security benefits. (*Id.*)

**{¶31}** We do not disagree with the trial court's conclusion, after its careful consideration of all of the statutory factors, that some spousal support might be

reasonable and appropriate. However, we find that the court's determination and calculation as to the amount of spousal support and its duration was arbitrary, unreasonable, and not supported by the facts in the record.

{¶32} First, while there might be some circumstances under which a determination of spousal support based upon the federal poverty level would be appropriate, that factor is completely arbitrary and unrelated to the facts in evidence in this case. That level of basic need includes the cost of housing and transportation. Yet, in this case, Joyce has been awarded two fully paid-for homes and two vehicles, plus a bank account with over $83,000 in the property division. There is no factual basis for utilizing that statistical level to determine the amount of spousal support in this case.

{¶33} While we acknowledge that Joyce's employment prospects may not be ideal, the record does not support the court's assumption that she must be supported by Guillermo until she reaches retirement age. Although Joyce testified that she was unable to work due to her mental condition, she was not found to be eligible for disability benefits by the Social Security Administration. Joyce had worked in the past, and she testified as to how capable she was at providing nursing care for Guillermo during his recovery. Furthermore, Joyce's lack of education and work experience was not the result of any opportunities that she had sacrificed as a result of this relatively short marriage. Her work-related

circumstances and opportunities when she left the marriage were essentially the same as when she entered it.

{¶34} Joyce's own testimony indicated that she did not want or need to have this amount of spousal support.  On direct examination, while being questioned by her own attorney, Joyce gave the following testimony concerning her belief as to what level of support was appropriate and reasonable.

> Q.   So if you are not awarded either spousal support, or a substantial cash award, how are you going to take care of yourself without Mr. Barrientos's help?
>
> A.   I don't know.
>
> * * *
>
> Q.   If you were awarded $83,000, the one bank account, would you still need spousal support from Mr. Barrientos to keep you going?
>
> A.   I wouldn't take anything more from him, no.
>
> Q.   You would be satisfied with that?
>
> A.   Yes.
>
> Q.   I guess to tie it up, I am trying to paraphrase, you would be happy about [receiving] a couple of houses, a couple of cars and one bank account?
>
> A.   Yes.
>
> Q.   And that would satisfy you?  * * *
>
> A.   Yes.

(Trial Tr. 11/13/08,  pp. 37-38)

{¶35} The Ohio Supreme Court has held that, with a few exceptions, such as in the case of a marriage of long duration, spousal support awards should not be indefinite, but should terminate upon a date certain. *Kunkle v. Kunkle*, at paragraph one of the syllabus. While Joyce's spousal support does terminate, upon her eligibility for Social Security retirement at age 62, the length of time she would receive support is longer than the marriage itself by a considerable amount. Although there is no specific formula or criteria to determine the appropriate length of spousal support, we do not find that it is reasonable to require Guillermo to support Joyce for eleven years after a marriage of fairly short duration. While we realize that courts often have valid reasons for associating the spousal support payment periods with the dates of retirement eligibility, we believe that there must also be a correlation to the length of the marriage and the other statutory factors. What if Joyce had been 41 or 31 years old at the time of the divorce? Would the trial court have found it appropriate to order support for twenty-one or thirty-one years under those circumstances?

{¶36} This Court cannot find any other instances, nor has Joyce provided any citations or references, where a trial court has found it appropriate to order spousal support for a definite period that is longer than the marriage. While each case is unique, and hard and fast rules are not applicable, courts generally award spousal support for lengthy periods after marriages of long duration. *See, e.g.,*

-20-

*Muckensturm v. Muckensturm*, 3d Dist. No. 5-11-38, 2012-Ohio-3062 (eleven years of spousal support, where wife lost ability to earn income after twenty-years of marriage as a homemaker and mother); Bowen *v. Bowen*, 132 Ohio App.3d 616, 627 (9th Dist.1999) (listing of marriages of "long duration" – all over twenty years). The duration of the spousal support in this case far exceeds the duration found in similar cases. *See, e.g., Parker v. Kohl-Parker,* 2d Dist. No. 21760, 2007-Ohio-5877 (thirty months spousal support appropriate for an eight-year marriage); *Kershner v. Kershner*, 11th Dist. No. 2004-P-004, 2004-Ohio-1523 (a three-year support period was appropriate for an eight year marriage). In fact, in a case with similar facts as here, even when the marriage was one of long duration, the trial court limited spousal support to a shorter period of time. *See Earnest v. Earnest*, 151 Ohio App.3d 682, 2003-Ohio-704 (11th Dist.) (wife, who had a sporadic employment history and an emotional condition, was awarded five years of spousal support after a twenty-two year marriage).

{¶37} The burden of establishing the need for spousal support rests with the party that is seeking such support. *Rymers v. Rymers*, 11th Dist. No.2009–L–160, 2010–Ohio–6439, ¶ 38; *Stetler v. Stetler*, 6 Ohio App.3d 29 (3d Dist.1983) (while there is no general burden of proof under R.C. 3105.18, each side has the burden of going forward with evidence as to any factor which it wants considered,

bringing forth facts tending to prove its version of the manner in which such factors should be applied).

{¶38} We acknowledge that there was some evidence in the record in support of the trial court's findings that spousal support would be appropriate pursuant to the factors in R.C. 3105.18(C). However, based upon Joyce's own testimony disavowing her need for support and the arbitrary method of determining the amount of support needed, we do not find sufficient evidence in the record that would warrant the amount and duration of support that was decided upon by the trial court. Therefore, Guillermo's second and third assignments of error are sustained.

{¶39} We find no error prejudicial to the Appellant pertaining to his first assignment of error, and the judgment of the trial court is affirmed pertaining to the division of property. However, having found error prejudicial to the Appellant herein in the particulars assigned and argued as to the second and third assignments of error, we reverse the judgment of the trial court as it pertains to spousal support and remand for further consideration consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and*
*Cause Remanded*

**PRESTON, P.J. and ROGERS, J., concur.**

**/jlr**