[Cite as *Banchefsky v. Banchefsky*, 2014-Ohio-899.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Debra K. Banchefsky, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 13AP-300 |
| | | (C.P.C. No. 08DR-259) |
| Robert Banchefsky, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 11, 2014

*Gary J. Gottfried Co., L.P.A.*, and *Gary J. Gottfried*, for appellant.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

CONNOR, J.

{¶ 1}  Defendant-appellant, Robert Banchefsky, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying his motion to set aside a magistrate's order finding that his pre-decree medical records were subject to discovery.  Plaintiff-appellee, Debra Banchefsky, has not filed an appellee brief with this court.  As such, the matter is before us solely on the arguments contained in defendant's brief and presented at oral argument.  Because (1) res judicata does not bar plaintiff from discovering defendant's pre-decree medical records, but (2) the trial court erred by failing to conduct an in camera inspection of the medical records before ordering their production, we affirm in part, reverse in part, and remand the case to the trial court.

I.      FACTS & PROCEDURAL HISTORY

{¶ 2} The matter currently before this court concerns a discovery dispute, which arose after defendant filed a motion to modify and/or terminate his spousal support obligation. The court determined defendant's spousal support obligation in the parties' divorce decree, issued on September 28, 2009. The facts underlying the decree were detailed by this court in *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267 as follows:

> The parties were married on January 13, 1985 and had two children during the marriage. At present, both children are beyond the age of majority; however, only the older child is emancipated. The younger child is not emancipated due to developmental disabilities.
>
> During the marriage, the parties resided in Bexley, Ohio. [Plaintiff] is employed as a speech and language pathologist. [Defendant] is a licensed practicing dentist and, during most of the marriage, was the sole shareholder of a dental practice known as Eastside Family Dental, Inc. ("Eastside Family Dental").
>
> On January 23, 2008, [plaintiff] filed a complaint for divorce, naming both [defendant] and Eastside Family Dental as defendants. [Defendant] filed an answer and counterclaim on February 14, 2008; Eastside Family Dental did not file an answer. Upon motion of [defendant], the trial court joined Raymond James Financial Services, Inc. ("Raymond James") as a third-party defendant; Raymond James filed an answer on April 29, 2008. Upon the parties' separate motions, the court issued standard temporary restraining orders pertaining to financial issues. In addition, the court, through a magistrate, issued temporary orders.
>
> On October 16, 2008, [defendant] filed a motion for modification of the temporary restraining orders to allow [defendant] to sell his dental practice. On May 19, 2009, the parties filed an agreed judgment entry modifying the temporary restraining orders to allow [defendant] to proceed with the sale. On May 21, 2009, [defendant] sold the practice to another dentist for $580,000 pursuant to an Asset Purchase Agreement ("APA"). The APA specifically included the sale of the trade name "Eastside Family Dental," along with the telephone and facsimile numbers, e-mail addresses, websites, and web address for Eastside Family Dental. In addition, the APA included a non-competition clause

precluding [defendant] from practicing dentistry within a ten-mile radius of Eastside Family Dental for five years, except as an associate of Eastside Family Dental. The APA further provided that [defendant] would work as an independent contractor for Eastside Family Dental for a period of time not to exceed six months following the sale.

Thereafter, the divorce proceeded to trial over several days in June, August, and September 2009. On September 28, 2009, the trial court filed a Decision and Judgment Entry Decree of Divorce. Therein, the court granted the parties a divorce, divided the marital property, determined that the parties are obligated to support the younger child beyond the age of majority, allocated parental rights and responsibilities for that child, ordered [defendant] to pay spousal support of $6,000 per month plus processing charge, and ordered [defendant] to pay child support in the amount of $1,500 per month plus processing charge. In addition, the court released the other defendants from the case.

*Banchefsky* at ¶ 2-6.

{¶ 3} Defendant presented five assignments of error in *Banchefsky*. This court overruled defendant's five assigned errors, and affirmed the judgment entry decree of divorce ("decree").

{¶ 4} In the decree, the court analyzed R.C. 3105.18(C)(1) factors before making an award of spousal support. The court noted that while plaintiff's annual income as a speech pathologist was $66,560, defendant's annual income as an independent contractor working for his former dental practice was projected to be between $150,000 and $170,000 for 2009. The court found that while plaintiff's earning ability was reflected in her current income, defendant's "actual relative earning ability [was] more difficult to ascertain," due to the sale of his dental practice. (Decree, 35.) The court determined that the defendant was voluntarily under-employed, and that he could be earning $312,131 per year. The court also noted that there was "no indication that Defendant suffers from mental or physical disabilities, which prevented him from maintaining his practice and/or working as a dentist." (Decree, 37.)

{¶ 5} The court then addressed the R.C. 3105.18(C)(1)(c) factor regarding the ages and the physical, mental, and emotional conditions of the parties. The court noted

that plaintiff was 52-years old and had been diagnosed with ovarian cancer in 1995, but underwent treatment and had been cancer free since that time. The court further noted that plaintiff suffered from fibromyalgia, arthritis, and migraines. Regarding defendant, the court stated simply that defendant was "52 years old and appears to be in good physical health." (Decree, 38.) The court then addressed the remaining applicable R.C. 3105.18(C)(1) factors, and found an award of spousal support to be appropriate. The court ordered that, beginning October 1, 2009, defendant was to pay plaintiff the sum of $6,000 per month in spousal support, until either parties' death, or plaintiff's remarriage or cohabitation with an unrelated adult male. The court also expressly retained jurisdiction to modify and/or terminate the award upon demonstration of a substantial change of circumstances.

{¶ 6} Defendant filed a motion to modify and/or terminate his spousal support obligation on January 25, 2011. Defendant alleged that there had been a substantial change in circumstances since the issuance of the decree. Specifically, defendant asserted that he had experienced "a reduction in employment hours and income." (Motion to Modify, 2.) In an attached affidavit, defendant indicated that his annual gross income had decreased from $154,000 at the time of the decree, to $108,000 at the time defendant filed the motion.

{¶ 7} On June 30, 2011, plaintiff filed a motion to dismiss defendant's motion to modify and/or terminate spousal support, asserting that there had not been a substantial change in circumstances. Plaintiff noted that the trial court and the appellate court had determined that defendant directly contributed to the reduction in his income, such that any decrease in defendant's income was not a substantial change in circumstances, "but [was] exactly what the court found he did throughout the pendency of his divorce case." (Plaintiff's Motion to Dismiss, 4.)

{¶ 8} On March 30, 2012, plaintiff's counsel issued a subpoena to Dr. Charles Gerlach. The subpoena requested Dr. Gerlach to produce "[t]he entire file maintained by you and/or Charles E. Gerlach, Ph.D. & Associates regarding Robert Banchefsky * * *." (Dr. Gerlach Subpoena Duces Tecum, Exhibit A.) Thereafter, the trial court requested that the parties submit memoranda of law to the court by July 30, 2012, regarding the discoverability of defendant's pre-decree medical records.

{¶ 9} In her memorandum, plaintiff noted that defendant claimed that he "suffer[ed] from mental and physical health problems which have resulted in his inability to work and earn at the same level as he did prior to the parties divorce; and therefore, his support obligations should be modified or terminated." (Plaintiff's Memorandum of Law, 2.) As such, plaintiff had asked defendant to sign medical releases for the specific health care providers he saw during the parties' divorce and after the divorce. Defendant refused to sign the releases, asserting that his pre-decree medical records were irrelevant, privileged, and not discoverable.

{¶ 10} Plaintiff asserted that defendant's medical records were not privileged, as defendant had placed these records at issue by filing the motion to modify and/or terminate his spousal support obligation. Plaintiff also noted that, "[d]uring the course of the parties divorce case, Defendant underwent treatment and was hospitalized for psychiatric/medical problems, the nature and extent of which he never disclosed." (Plaintiff's Memorandum of Law, 3.) Plaintiff asserted that defendant had "refused to disclose information related to his treatment because he argued he did not intend [to] use it as a factor for the court to consider when it determined his spousal support obligation." (Plaintiff's Memorandum of Law, 3.) Plaintiff argued that the court should order defendant to sign the releases and produce his pre-decree medical records, because without such evidence plaintiff would not be able to ascertain whether defendant's medical condition had changed since the time of the decree. Plaintiff further asserted that an in camera inspection of the medical records was unnecessary.

{¶ 11} Defendant admitted that the basis for his motion to modify and/or terminate spousal support was his current health and disability, which had resulted in an involuntary reduction to his income. Defendant asserted that, as the parties "previously litigated to finality the issue of Defendant's mental, physical and emotional health," res judicata precluded plaintiff from discovering his pre-decree medical records. Defendant asserted that plaintiff was precluded from attempting to re-litigate "a R.C. 3105.18 spousal support factor (e.g. party health) through the discovery of Defendant's pre-decree medical records." (Defendant's Memo in Opposition to Disclosure of Pre-Divorce Medical Records, 4.) Accordingly, defendant asked the court to deny plaintiff's request for his pre-decree medical records. In the alternative, defendant asked the court

to conduct an in camera inspection of the records, to determine if the medical records had a causal or historic relationship to the issues in the current proceedings.

{¶ 12} On November 20, 2012, the magistrate issued an order finding that defendant's pre-decree mental health records were subject to discovery. The magistrate noted that, while the court found defendant to be in good physical health in the decree, the court had "made no specific findings as to Defendant's mental health." (Magistrate's November 20, 2012 Order, 1.) Accordingly, the magistrate held that any alleged change of circumstances based on defendant's mental health called into question defendant's mental health at the time of the decree. The magistrate ordered that defendant provide plaintiff with "any and all discovery related to his mental health or treatment for mental health related issues from the date of filing of the parties' divorce action to present, including any diagnosis regarding Defendant's mental health that was being treated during the parties' divorce proceedings." (Magistrate's November 20, 2012 Order, 2.)

{¶ 13} Defendant filed a motion to set aside the magistrate's order on November 28, 2012. In the motion to set aside, defendant asserted that he "believe[d] that Plaintiff had knowledge of Defendant's hospitalization" during the divorce proceedings, and asserted that plaintiff chose not to present evidence regarding defendant's hospitalization during the trial. Accordingly, defendant contended that res judicata now barred plaintiff from raising the issue of defendant's pre-decree mental health.

{¶ 14} Plaintiff filed a memorandum contra defendant's motion to set aside on December 7, 2012. Plaintiff asserted that she did not have an obligation to present evidence during the trial regarding defendant's hospitalization, noting that defendant had refused to disclose information to her regarding the hospitalization. Plaintiff asserted that defendant had the burden to raise his mental health issues as a defense to the amount of spousal support.

{¶ 15} On March 21, 2013, the trial court issued a decision and judgment entry denying defendant's motion to set aside the magistrate's decision. The court noted that "[d]efendant's mental and physical health are issues which he has raised in his *Motion to Modify*, indicating that circumstances have changed since the date of the parties' divorce and his current mental and physical health render him disabled to a degree that did not exist at the time of the parties' divorce." (Decision, 3.) The court noted that,

while defendant contended that the requested information would not be admissible at trial, the magistrate would "be able to discern the admissibility of said information at the time it is presented." (Decision, 3.) The trial court thus found that any ruling on the ultimate admissibility of the requested evidence was "premature." (Decision, 3.) The court ruled that the information contained in defendant's pre-decree mental health records was likely to lead to relevant evidence, and was thus subject to discovery.

## II.    ASSIGNMENTS OF ERROR

{¶ 16} Defendant appeals, assigning the following errors:

> 1. Collateral estoppel and/or res judicata operate to render Appellant's pre-*Decree* medical records irrelevant to the current proceedings and the trial court erred and abused its discretion when it concluded that Appellant's pre-*Decree* medical records are discoverable.

> 2. For the reason that Appellant's pre-*Decree* medical records are privileged and because they are not related to the current proceedings due to the operation of collateral estoppel and/or res judicata, the trial court erred and abused its discretion when it concluded that Appellant's pre-*Decree* medical records are discoverable.

> 3. The trial court erred and abused its discretion when it failed to order an in camera inspection of any medical records to be produced prior to release to third parties.

## III.   FIRST ASSIGNMENT OF ERROR – RES JUDICATA

{¶ 17} Defendant's first assignment of error asserts that res judicata and collateral estoppel bar plaintiff from discovering his pre-decree medical records. Defendant contends that the court ruled upon defendant's physical, mental, and emotional well being in the decree, thereby rendering any evidence of defendant's pre-decree medical condition res judicata, irrelevant to the current proceedings, and non-discoverable.

{¶ 18} " 'The standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion.' " *Maschari v. Tone,* 103 Ohio St.3d 411, 2004-Ohio-5342, ¶ 18, quoting *State ex rel. Denton v. Bedinghaus,* 98 Ohio St.3d 298, 2003-Ohio-861, ¶ 31. The term "abuse of discretion" connotes more than an error of law or

judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 19} The scope of pretrial discovery is very broad. Civ.R. 26(B)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The rule further provides that "[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Civ.R. 26(B)(1).

{¶ 20} A trial court has broad discretion in determining a spousal support award, including whether or not to modify an existing award. *Samblanet v. Samblanet*, 12th Dist. No. CA2013-03-040, 2013-Ohio-5768, ¶ 18. To modify a spousal support award, a trial court must find that (1) the divorce decree contained a provision specifically authorizing the court to modify the spousal support, and (2) the circumstances of either party have changed. *Id.* at ¶ 19; R.C. 3105.18(E). A change of circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses. R.C. 3105.18(F).[1] The court must find a substantial change in circumstances before modifying a prior spousal support order. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, ¶ 31. The change in circumstances also "must be one that had not been contemplated and taken into account by the parties or the court at the time of the prior order." *Id.* at ¶ 32. The party seeking modification of a spousal support obligation bears "the burden to establish that a substantial change in circumstances has occurred since the time of the trial court's original decision." *Flauto v. Flauto,* 7th Dist. No. 05 MA 100, 2006-Ohio-4909, ¶ 11.

{¶ 21} The trial court record reveals that defendant filed the motion to modify and/or terminate based upon a reduction in his income, resulting from his mental and physical health issues. Because defendant must demonstrate that a substantial change in circumstances has occurred, which he did not contemplate at the time of the divorce,

---

[1] R.C. 3105.18 has been amended, and the changes became effective on March 22, 2013. As the trial court issued its decision denying defendant's motion to set aside the magistrate's decision on March 21, 2013, we will address the statute as it appeared at the time of the judgment.

we find that defendant's pre-decree mental health records are relevant to the current action, and thus subject to discovery. Defendant asserts that res judicata bars plaintiff from discovering his pre-decree medical records.

{¶ 22} The doctrine of res judicata provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.,* 73 Ohio St.3d 379 (1995), syllabus. " 'It has long been the law of Ohio that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit." ' " (Emphasis sic.) *Id.* at 382, quoting *Natl. Amusements, Inc. v. Springdale,* 53 Ohio St.3d 60, 62 (1990), quoting *Rogers v. Whitehall,* 25 Ohio St.3d 67, 69 (1986) (noting that " '[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it' "). *Id.*

{¶ 23} The doctrine of res judicata has two aspects: claim preclusion and issue preclusion. *Dehlendorf v. Ritchey,* 10th Dist. No. 12AP-87, 2012-Ohio-5193, ¶ 13, citing *Grava* at 380. Issue preclusion, also known as collateral estoppel, provides that "a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.,* 81 Ohio St.3d 392, 395 (1998). Thus, the collateral estoppel aspect of res judicata "precludes the relitigation, in a second action, of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Id.*

{¶ 24} Defendant asserts that, because the "parties litigated the issue of [defendant's] pre-decree health to finality as evidenced by the parties' *Decree* and, more specifically, the court's conclusion regarding the same therein that Appellant was in good health," the issue of his pre-decree health is now res judicata, and collateral estoppel bars plaintiff from attempting to present evidence regarding defendant's pre-decree health. (Appellant's brief, 5.) We disagree.

{¶ 25} Defendant acknowledges that, "[a]t the time of the trial, there was no evidence presented by either party regarding Appellant's mental and emotional condition," and admits that his "mental or emotional health was not a factor that the court considered in its award of spousal support." (Appellant's brief, 2.) Defendant thus concedes that his mental or emotional health was not a fact or a point that was actually or directly at issue in the previous action. Because there was no evidence before the court regarding defendant's mental health, the trial court could not have made a ruling on that R.C. 3150.18(C)(1) factor when issuing the decree. *Compare Mantle v. Sterry*, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 40 (noting that several of the R.C. 3105.18(C)(1) factors were "inapplicable because no facts were adduced bearing upon them"). Thus, as the parties did not present evidence regarding defendant's mental health, and the trial court did not make a ruling on defendant's mental health, res judicata and/or collateral estoppel cannot operate to bar discovery of defendant's pre-decree mental health records, which defendant has placed at issue by filing the motion to modify and/or terminate spousal support.

{¶ 26} Defendant asserts that in *Gross v. Gross*, 64 Ohio App.3d 815 (10th Dist.1990) "this court applied res judicata/collateral estoppel to preclude relitigation of the issue of a R.C. 3105.18 spousal support factor." (Appellant's brief, 5.) In *Gross*, we applied res judicata to the amount of the spousal support award, which the trial court had determined after analyzing the relevant factors, and this court had affirmed in a separate appeal. In contrast, here, the trial court did not analyze the evidence regarding defendant's mental health, as there was no evidence to analyze, and did not make a ruling to which res judicata could attach. *Gross* is inapplicable to the instant action.

{¶ 27} Defendant also indicates that his pre-decree medical records are res judicata because plaintiff chose not to present any evidence regarding the issue of defendant's mental health during the trial. Defendant notes his "belie[f] that [plaintiff] had knowledge of a period of hospitalization for [defendant] during the divorce proceedings," and asserts that plaintiff intentionally chose not to litigate defendant's mental health at the time of trial. (Appellant's brief, 7.) However, the trial court record reveals that, while plaintiff was potentially aware of the hospitalization, defendant refused to provide plaintiff with any discovery regarding the hospitalization. As such,

plaintiff did not possess any evidence to present to the court regarding defendant's hospitalization or mental health problems.

{¶ 28} Moreover, the burden of establishing the need for spousal support rests with the party that is seeking such support. *Barrientos v. Barrientos*, 3d Dist. No. 5-12-13, 2013-Ohio-424, ¶ 37. "[E]ach side has the burden of going forward with evidence as to any [R.C. 3105.18(C)(1)] factor which it wants considered, bringing forth facts tending to prove its version of the manner in which such factors should be applied." *Id.*, citing *Stetler v. Stetler*, 6 Ohio App.3d 29 (3d Dist.1983). Accordingly, while plaintiff had the burden to establish her need for the spousal support award, defendant had an obligation to present the court with evidence regarding his mental health, if he wanted the court to consider his mental health issues when determining the appropriate amount to award as spousal support.

{¶ 29} Defendant asserts that the "absence of a determination that [defendant] had any mental health issues * * * is conclusive and cannot be rebutted in these proceedings." (Appellant's brief, 8.) However, as noted, the reason there is no determination by the trial court regarding defendant's mental health is because defendant did not provide the court with evidence regarding his mental health during the divorce proceedings. Defendant may not willfully conceal his mental health condition from the trial court during the divorce proceedings, then later claim a change of circumstances has occurred based on a condition which defendant knew was in existence at the time of the decree. *See Kaput v. Kaput*, 8th Dist. No. 94340, 2011-Ohio-10, ¶ 15 (noting that the party seeking modification of spousal support "must not have purposefully brought about the change").

{¶ 30} Defendant's pre-decree medical records are relevant to the instant action, as defendant has admitted that his motion to modify and/or terminate spousal support is based upon his deteriorating physical and mental health and his attendant reduction in income. As such, defendant's pre-decree mental health records are discoverable as they are likely to lead to admissible evidence regarding whether defendant has experienced a substantial change in circumstances sufficient to justify a modification to his spousal support obligation. The collateral estoppel aspect of res judicata does not prevent plaintiff from discovering defendant's pre-decree mental health records.

{¶ 31} Based on the foregoing, defendant's first assignment of error is overruled.

## IV. SECOND ASSIGNMENT OF ERROR – PRIVILEGE

{¶ 32} Defendant's second assignment of error asserts that his pre-decree medical records are privileged documents pursuant to R.C. 2317.02(B), and thus not subject to discovery. Though we generally review discovery issues for an abuse of discretion when discovery involves questions of privilege, we review the order de novo. *Ward v. Johnson's Indus. Caterers, Inc.*, 10th Dist. No. 97APE11-1531 (June 25, 1998).

{¶ 33} Pursuant to R.C. 2317.02, a person's medical records are privileged and, therefore, undiscoverable. *Groening v. Pitney Bowes, Inc.*, 8th Dist. No. 91394, 2009-Ohio-357, ¶ 11. R.C. 2317.02(B)(1) generally precludes a physician from testifying concerning a communication made by a patient to the physician or the physician's advice to the patient. If, however, a patient files a civil action, a physician may be compelled to testify or to submit to discovery in that action as to a communication between the patient and physician "that related causally or historically to physical or mental injuries that are relevant to issues" in the action. R.C. 2317.02(B)(3)(a). *See also* R.C. 2317.02(B)(1)(a)(iii); *Mason v. Booker*, 185 Ohio App.3d 19, 2009-Ohio-6198, ¶ 14 (10th Dist.).

{¶ 34} Defendant acknowledges that, because he "is engaged in post-decree proceedings regarding spousal support and his health is a statutory factor that the court is required to consider, it is necessary to consider whether his pre-*Decree* health records are 'causally or historically related' to the pending action." (Appellant's brief, 9.) Defendant thus acknowledges that, by filing the motion to modify and/or terminate spousal support, he has placed his medical records at issue.

{¶ 35} Defendant asserts that his pre-decree medical records are not causally or historically related to the issues in the current action due to the operation of collateral estoppel and/or res judicata. Defendant continues to assert that, as the court found an "absence of health issues" for defendant in the decree, his pre-decree medical records have no bearing on the pending motion as his health status at the time of the divorce has been "definitively and irrebuttably [sic] established." (Appellant's brief, 9.)

{¶ 36} Defendant is essentially rehashing the arguments presented under his first assignment of error, and those arguments fail here for the same reasons explained

above. At the time of the decree, the court did not have any evidence before it regarding defendant's mental or emotional health and, accordingly, the court could not have made a determination regarding his mental health. Accordingly, collateral estoppel and res judicata do not render defendant's pre-decree mental health records irrelevant to the current action.

{¶ 37} Based on the foregoing, defendant's second assignment of error is overruled.

## V.    THIRD ASSIGNMENT OF ERROR – IN CAMERA REVIEW

{¶ 38} Defendant's third assignment of error asserts that the trial court erred in ordering defendant to produce his mental health records without first conducting an in camera inspection of those records to determine whether they contain privileged communications. We agree.

{¶ 39} Only those documents deemed causally or historically related to physical or mental injuries, pursuant to R.C. 2317.02(B)(3)(a), are relevant to the issues in the case and subject to discovery. *Nester v. Lima Mem. Hosp.*, 139 Ohio App.3d 883, 887 (3d Dist.2000). Thus, "when there is a dispute about whether records are privileged, and when a party reasonably asserts that records should remain privileged, the trial court must conduct an in camera inspection of the records to determine if they are discoverable." *Cargile v. Barrow*, 182 Ohio App.3d 55, 2009-Ohio-371, ¶ 12 (1st Dist.) *See also Groening* at ¶ 12; *Ward* (noting that "the protection afforded under [R.C. 2317.02] covers discovery and, therefore, it is entirely proper for a trial court to, if necessary, determine at the discovery phase what is causally or historically related").

{¶ 40} While this court has refused to find error where a trial court did not conduct an in camera inspection, but the appealing party had not requested one, *see Mason* at ¶ 19, here, defendant did request an in camera inspection. Although plaintiff argued in her memorandum of law that an in camera inspection was unnecessary, plaintiff concluded her memorandum by asking the court to compel the release of defendant's medical records, "or, in the alternative, that the Court conduct an in camera interview of Defendant's medical/psychological records to determine that they are causally and historically related to the issues before the court, and therefore that they are discoverable." (Plaintiff's Memorandum of Law, 5.) Accordingly, plaintiff has tacitly

acknowledged that an in camera inspection of defendant's medical records is necessary in the instant action.

{¶ 41} The magistrate ordered defendant to produce "any and all discovery related to his mental health" from the beginning of the divorce proceedings. (Magistrate's November 20, 2012 Order, 2.)  Such a broad production order could conceivably include items which are privileged under R.C. 2317.02.  Accordingly, the trial court must conduct an in camera inspection of the mental health records at issue.  Additionally, although we do not know what kinds of mental health records defendant will produce, we note that the "conditions for disclosure listed in [R.C. 2317.02] are not the same for medical records as for counseling records."  *Folmar v. Griffin*, 166 Ohio App.3d 154, 2006-Ohio-1849, ¶ 23 (5th Dist.) While psychiatrists are considered physicians, and psychiatric records are subject to release under R.C. 2317.02(B), R.C. 2317.02(G) provides different requirements for disclosure of records from other mental health professionals, such as counselors and therapists.  *Id.* at ¶ 18-22.

{¶ 42} Based on the foregoing, we find that the trial court erred in not conducting an in camera inspection of the records before ordering them disclosed.  The court must examine the records to determine, if the records are medical records to which R.C. 2317.02(B) applies, whether the communication is causally or historically related to the issues in the present action.  If the records are counseling records from mental health professionals who are not physicians, then R.C. 2317.02(G) applies and the court must determine whether the communication falls under one of the exceptions contained therein.  Because the trial court did not determine, upon request, whether the records it ordered disclosed were privileged under R.C. 2317.02, we must remand the case for the court to conduct an in camera inspection of defendant's mental health records.

{¶ 43} Based on the foregoing, defendant's third assignment of error is sustained.

## VI.   DISPOSITION

{¶ 44} Having overruled defendant's first and second assignments of error, but having sustained defendant's third assignment of error, we affirm in part the judgment of the Franklin County Court of Common Pleas denying defendant's motion to set aside the magistrate's November 20, 2012 decision, but reverse the judgment to the extent it did not require an in camera inspection of the medical records, and remand the case

with instructions that the court conduct an in camera inspection of defendant's mental health records to determine which, if any, of those records are privileged and non-discoverable under R.C. 2317.02.

*Judgment affirmed in part and reversed in part,*
*case remanded with instructions.*

TYACK and KLATT, JJ., concur.

_____