[Cite as *Hosler v. Hosler*, 2016-Ohio-5777.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

BRYAN K. HOSLER,                               :

    Plaintiff-Appellant,              :          CASE NO.   CA2015-10-089

                                      :               O P I N I O N
    - vs -                                             9/12/2016

                                      :

SUANN C. HOSLER,                              :

    Defendant-Appellee.               :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2014 DRB 00511


Heis & Wenstrup Co., LPA, Grant S. Wenstrup, Daniel J. Wenstrup, 817 Main Street, Suite 800, Cincinnati, Ohio 45202, for plaintiff-appellant

The Farrish Law Firm, Michaela M. Stagnaro, 810 Sycamore Street, 6th Floor, Cincinnati, Ohio 45202, for defendant-appellee


    **PIPER, J.**

    {¶ 1} Plaintiff-appellant, Bryan Hosler ("Husband"), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, separating property after his divorce from defendant-appellee, Suann Hosler ("Wife").

    **A.  Statement of Facts**

    {¶ 2} Husband and Wife were married in 1980, and had three children born issue of

the marriage. The parties separated in 2012, and Husband filed for divorce in 2014. At the time of the divorce complaint, all three of the parties' children were emancipated. Husband, who is a chiropractor and radiologist, owns a business that specializes in reading x-ray and MRI images for other chiropractors. Husband is an employee of his business, Diagnostic Imaging Consultants ("DIC"), and also receives income from a different company that utilizes his direct services.

{¶ 3} While the parties reached some stipulations regarding the division of their vehicles and time-share properties, the parties' disputed how their remaining assets and debt should be divided, and the trial court held a three-day hearing on the matter. Prior to the trial date, the trial court instructed the parties to exchange exhibits, but Husband did not provide opposing counsel some exhibits, including his completed 2014 tax return. As such, the draft of Husband's 2014 tax information, which Husband tried to offer on the first day of the hearing, was not admitted into evidence and not considered by the trial court. After the three-day hearing, the trial court issued a divorce decree dividing property and debts, as well as setting the terms of spousal support. Husband now appeals the trial court's orders, raising the following assignments of error.

**B. Standard of Review**

{¶ 4} Many of Husband's assignments of error are controlled by well-settled law specific to property and debt distribution in a divorce. Property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 11. Pursuant to R.C. 3105.171(B), the first step is for the court to "determine what constitutes marital property and what constitutes separate property" or what constitutes marital debt. *Cooper v Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 13. An appellate court reviews the trial court's classification of property or debt as marital or

separate under the manifest weight of the evidence standard. *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 8.

{¶ 5} Manifest weight "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 36. In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Id.* "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

{¶ 6} After classifying the property as separate or marital, "the court shall disburse a spouse's separate property to that spouse" and divide the marital property equally. R.C. 3105.171(C)(1) and (D). However, if the court finds an equal division would be inequitable, then the court must divide the property in a manner it determines is equitable. R.C. 3105.171(C)(1). The trial court is given broad discretion in fashioning a property or debt division and will not be reversed absent an abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54. More than mere error of judgment, an abuse of discretion requires that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

## C. Assignments of Error and Analysis

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN FAILING TO DETERMINE THAT [WIFE] RECEIVED THE SUM OF $9,000.00 FROM THE DIC CHECKING ACCOUNT, AND IN

FAILING TO CHARGE THAT AMOUNT AGAINST [WIFE'S] DISTRIBUTION OF ASSETS AND LIABILITIES AFTER THE COURT FOUND THAT THE DIC ACCOUNT WAS A MARITAL ASSET, AND EVIDENCE THAT SHE RECEIVED IT WAS UNDISPUTED.

{¶ 9}   Husband argues in his first assignment of error that the trial court improperly failed to give him a setoff for an amount that he claims Wife received from DIC's checking account.

{¶ 10}   Husband argues that Wife ordered checks without his knowledge, and then drew amounts exceeding $9,000 from the DIC account causing it to be overdrawn. The trial court determined that DIC was a marital asset, and as such, Husband argues that the trial court erred by not offsetting Wife's portion of the assets by the $9,000 she allegedly took from the DIC account.

{¶ 11}   While Husband testified that Wife ordered and wrote the checks from the DIC account totaling approximately $9,000, the trial court did not make a finding in regard to whether the $9,000 should be treated as a marital asset and whether Husband should have been credited for half of this asset.

{¶ 12}   During the hearing, Husband testified that at one point, he went to the bank and learned that DIC's account was overdrawn. When asked to explain further, Husband testified that Wife ordered checks, had the checks delivered, and then wrote $9,000 in checks without his knowledge. According to Husband's testimony, Wife's writing of checks caused DIC's account to become overdrawn and DIC employees could not cash their payroll checks until later. Husband was asked again whether Wife was the one who wrote $9,000 in checks, and Husband confirmed as much.

{¶ 13}   While Wife argues that Husband did not present any documentary evidence of her withdrawing the money, the trial court was presented with Husband's testimony that Wife withdrew $9,000 from what the trial court later determined was a marital asset. Without this

- 4 -

testimony being addressed by the trial court, we cannot fairly review whether or not the trial court considered the $9,000 in its equalization of assets. As such, Husband's first assignment of error is sustained. Upon remand, the trial court shall determine whether there is credible evidence in the record to support Husband's contention that Wife withdrew $9,000 from DIC's account, and if so, how such amount will be divided or otherwise considered in equalizing assets between the parties.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED IN FAILING TO INCLUDE IN THE SCHEDULE OF ASSETS RECEIVED BY [WIFE] THE SUM OF $21,279.49 [SIC] THAT [WIFE] TOOK FROM THE DIC LINE OF CREDIT, AND IN FAILING TO CHARGE THAT AMOUNT AGAINST [WIFE'S] DISTRIBUTION OF ASSETS AND LIABILITIES AFTER THE COURT SPECIFICALLY HELD THAT [WIFE] DID RECEIVE THAT MARITAL ASSET.

{¶ 16} Husband argues in his second assignment of error that the trial court incorrectly failed to offset an amount Wife took from a line of credit owned by DIC.

{¶ 17} The record is undisputed that Wife received $21,279.47 from the DIC line of credit. There is also no dispute that Wife was ordered by the trial court to repay that amount to the line of credit debt.[1] However, Husband argues that Wife's receipt of $21,279.47 from the line of credit should have been listed as both an asset because she received the money and used it for her benefit, as well as a debt. However, the record indicates that the trial court clearly took into consideration the manner in which Husband would be credited for the amount Wife removed.

{¶ 18} The record indicates that the trial court valued DIC by taking into consideration

---

1. Husband argues that an email from the valuator indicates that if Wife's withdrawal was not considered an asset of the company, DIC's value would drop to approximately $2,000. However, the valuator was unaware at the time that the trial court was going to order Wife to pay DIC $21,279.47 for her withdrawal. As such, and even if the asset was removed from consideration, and DIC's value would have been $2,000, the moment Wife's repayment occurred, the value of the business would have increased to approximately $23,000.

the *entire* debt owed on the company's line of credit ($48,733), which specifically included what Wife was ordered to repay DIC. However, at the time of the business valuation, Wife had not yet paid back the $21,279.47. As such, the trial court's order that Husband be credited with the entire business value of $23,346 takes into account that Wife held an asset worth $21,279.47 by reducing the value of the business to account for the money that Wife took against the line of credit. Husband therefore had to pay less to Wife to equalize her half of the business, which was clearly a marital asset.

{¶ 19} As such, Husband received the benefit of Wife's debt because it reduced the marital value of the business, or more specifically, accounted for the fact that Wife would be repaying $21,279.47 to DIC. This division was therefore a way for the trial court to address the fact that DIC, once reimbursed for Wife's line of credit withdrawal, would be worth $21,279.47 more – an amount Husband would have had to split with Wife. Rather than order as much, the trial court simply ordered Wife to pay back the entire amount she withdrew from DIC, and we therefore find no abuse of discretion in the trial court's ruling. Husband's second assignment of error is therefore overruled.

{¶ 20} Assignment of Error No. 3:

{¶ 21} THE COURT ERRED IN HOLDING THAT, IF [HUSBAND] PURCHASED THE MARITAL RESIDENCE, HE MUST PAY [WIFE] THE AMOUNT OF $167,891.19, WHICH AMOUNT THE COURT STATED WAS THE SUM OF $151,380.00, $7,542.94, AND $1,141.25.

{¶ 22} Husband argues in his third assignment of error that the trial court made a mathematical error when issuing its divorce decree. Wife concedes this mathematical error. We therefore sustain Husband's third assignment of error and remand for the trial court to correct its mathematical calculation and to issue a corrected entry.

{¶ 23} Assignment of Error No. 4:

{¶ 24} THE COURT ERRED WHEN IT HELD THAT [HUSBAND] RECEIVED A PERSONAL BENEFIT OF $8,000.00 FROM MOHICAN GAMING STOCK, AND $1,500.00 FROM THE SALE OF DIC'S INOPERABLE 2002 BMW WHEN HE DEPOSITED THE PROCEEDS FROM THOSE ASSETS INTO DIC, WHICH WAS DIVIDED EQUALLY BY THE COURT BETWEEN THE PARTIES AS A MARITAL ASSET.

{¶ 25} Husband argues in his fourth assignment of error that the trial court erred when charging certain benefits to him when he placed proceeds from the sale of such items in an account that was eventually divided equally.

{¶ 26} The trial court determined that Husband received approximately $24,000 from stock that he sold, which was a marital asset. Husband testified that he placed $8,000 of the proceeds in DIC's checking account, $8,000 in his own checking account, and $8,000 into a joint checking. The latter two $8,000 deposits are not questioned, and Husband does not dispute the way in which the trial court allocated those two deposits. However, Husband argues that the trial court erred by charging him with the full $8,000 amount he placed in DIC's checking account because DIC was determined to be a marital asset. As such, Husband argues that he should have been credited with only $4,000 of that particular deposit.

{¶ 27} Husband also argues that he was wrongly charged with $1,500 from the sale of an inoperable BMW that was titled in DIC's name. The trial court charged the entire $1,500 to Husband, while he argues that it should have been treated as part of the overall value of DIC – much in the same manner as the $8,000 discussed above. Because the trial court credited the entire value of DIC against Husband given that he was entitled to keep the business after the divorce, as well as the entire sum of $9,500, he argues that he is now being charged twice for the same asset.

{¶ 28} Regarding the $8,000, the record indicates that Husband cashed the stock just

before the parties separated in 2012. The trial court heard testimony from Husband that he used the $8,000 deposited in DIC's account for pay business expenses, such as "taxes and that kind of stuff." The BMW proceeds were used to pay "regular payments and bills" of the business. Even so, the trial court made a finding that all funds should be credited against Husband.

{¶ 29} Specific to the $8,000, Husband confirmed during his testimony that once he deposited the money into DIC's account, the proceeds went back into the business and that he continued to run the business with the $8,000 helping to pay for some of the business-related expenses. Despite this testimony, the trial court made a finding that "there was no evidence that [Husband] used the money that he deposited into his separate account and into DIC's account to pay marital expenses." However, the trial court's entry does not demonstrate whether the trial court considered Husband's testimony that the $8,000 he deposited into DIC's account was used for DIC's business purposes.

{¶ 30} Given the trial court's determination that DIC was a marital asset to be split equally, if DIC benefitted from the $8,000, then the $8,000 would have been a marital asset subject to division as part of DIC. However, because the trial court did not address whether it found Husband's testimony credible on this issue, we are unable to determine if the trial court abused its discretion in charging Husband with the entire $8,000 deposited into DIC's account.

{¶ 31} Specific to the BMW, Husband testified that the car was owned by DIC, and that when the car was sold for parts, the $1,500 in proceeds were deposited into DIC's account to pay for business expenses. Rather than address specifically whether the car was DIC property or how such ownership would impact the property division, the trial court stated in its entry, "the parties owned a 2002 740i BMW during the marriage." The court also stated, Husband, "admitted that he kept these funds and did not share them with [Wife]."

{¶ 32} However, Husband testified during the trial that he deposited the proceeds from selling the BMW into the business account, and that the car was "actually a business car." When asked what the proceeds were used for, Husband testified that it was used for paying DIC's bills. As such, the trial court's finding that the parties owned the car appears inaccurate. If the trial court did not believe Husband's testimony that the car belonged to DIC, or found that the proceeds were not used for business purposes, the trial court needed to address such determinations.

{¶ 33} Husband's fourth assignment of error is therefore sustained. On remand, the trial court shall determine what weight is to be given Husband's testimony regarding the $8,000 and the $1,500 in proceeds allegedly used for DIC's business expenses and whether these proceeds should be divided as part of DIC as a marital asset.

{¶ 34} Assignment of Error No. 5:

{¶ 35} THE TRIAL COURT ERRED IN FAILING TO INCLUDE, IN THE SCHEDULE OF DISTRIBUTION OF ASSETS AND LIABILITIES, THE AMOUNTS RECEIVED BY [WIFE] IN THE SUM OF $22,393.42 THAT [WIFE] TRANSFERRED FROM THE JOINT BANK ACCOUNT, A MARITAL ASSET, TO HER PERSONAL BANK ACCOUNT.

{¶ 36} Husband argues in this fifth assignment of error that the trial court failed to correctly offset an amount Wife transferred from the couple's joint checking account for her personal use.

{¶ 37} The trial court considered an exhibit showing several transfers Wife made from an account into her separately held personal account. However, the trial court never heard any testimony from either party as to what the transfers were, what the money was used for, or even from what account the money truly came.

{¶ 38} This court, much like the trial court, is completely unaware of where the money came from, what it was being used for, or why Wife was receiving the payments. While Wife

asserts that Husband agreed to provide her with monthly support during the pendency of the divorce and that the transfers could account for such support, the record is devoid of any evidence as to the transfers Husband now challenges. While Husband argues that the transferred amount must be considered a marital asset, the record simply does not support such a contention.

{¶ 39} Regardless of the parties' arguments as to what the transfers were or were not, the trial court did not abuse its discretion in not dividing or charging the transfers when the trial court had no evidence before it regarding the transferred funds. As such, we find no abuse of discretion, and overrule Husband's fifth assignment of error.

{¶ 40} Assignment of Error No. 6:

{¶ 41} THE TRIAL COURT ERRED IN HOLDING THAT THE SUM OF $32,000.00 THAT [HUSBAND] BORROWED FROM NORTHWEST MUTUAL AND THEN USED IT TO PAY MARITAL OBLIGATIONS WAS INSTEAD A MARITAL ASSET THAT HE RECEIVED PERSONALLY.

{¶ 42} Husband argues in his sixth assignment of error that the trial court erred by categorizing a loan Husband took out as a marital asset, and by crediting the asset to Husband.

{¶ 43} The record indicates, and Husband does not contest, that Husband borrowed $38,000 from his Northwest life insurance policy. Husband gave $6,000 to Wife, and later claimed that the remaining $32,000 was used to pay for whatever financial "crisis" would arise. These crises included paying for an emancipated child's car, an emancipated child's college tuition, an emancipated child's hospital bill, a plumbing bill for the marital residence, as well as funding one of the couple's three time-share vacation properties and a players-club membership.

{¶ 44} Despite Husband's testimony that he used the $32,000 to pay for these

financial needs and that such were marital in nature, the trial court found that "no evidence" was presented that Husband used the funds to pay marital expenses. Specifically, the trial court's decision indicates that "there was no evidence that either party used these funds to pay marital expenses." However, Husband testified that he used at least $5,000 of the proceeds to pay a maintenance bill for the marital home. He also testified to paying bills for the couple's children and time shares owned by the couple. While the trial court made a finding that there was no evidence regarding the use of these funds for marital purposes, the record does contain evidence through Husband's testimony.

{¶ 45} It is possible that the trial court did not find this testimony credible, thus leaving the record void of any credible evidence that the funds were used for marital purposes. However, without a specific determination from the trial court that it found Husband's testimony lacking credibility, we cannot assume as much. As such, and on remand, the trial court shall make a determination as to whether Husband's testimony on the matter was credible, and if so, in what way the assets will or will not be considered marital for division purposes.

{¶ 46} Husband's sixth assignment of error is sustained and the issue is remanded for the trial court's determination on the credibility of the evidence contained in the record.

{¶ 47} Assignment of Error No. 7:

{¶ 48} THE COURT ERRED IN FAILING TO HOLD THAT [HUSBAND] HAD INCURRED MARITAL DEBT IN ORDER TO BECOME A CHIROPRACTOR IN THE AMOUNT OF $164,000.00, OR SUCH OTHER AMOUNT AS IT SHOULD HAVE BEEN DETERMINED, AND FURTHER FAILED TO SPLIT THAT DEBT AS A MARITAL OBLIGATION.

{¶ 49} Husband argues in his seventh assignment of error that the trial court erred by determining that his student loan was not a marital debt and by not dividing the debt between

the parties.

{¶ 50} Shortly after the parties were married in 1980, Husband started school to become a chiropractor and radiologist. Husband testified that he incurred student loan debt as a result, and that he received an invoice for $164,000 in unpaid student loans shortly before the hearing occurred. However, Husband did not produce any evidence other than his testimony that the amount owed was $164,000 or that this amount was due for student debt incurred during the marriage.

{¶ 51} While Wife admitted during the hearing that Husband did go to school after the marriage, she also testified that Husband had student loans from his undergraduate degree, which was premarital. There was no evidence presented as to what amount of debt was actually incurred during the marriage versus how much already existed before the marriage. Nor was any evidence submitted as to how much debt had been paid during or before the marriage, or even how such debt would be in existence over 25 years after Husband's graduation and establishment of his business.[2]

{¶ 52} The trial court noted the lack of credible evidence regarding the student loan debt. Unlike the previous assignments of error in which the trial court's decision noted that no evidence was presented as to Husband's arguments, the trial court specifically recognized that Husband testified about the student loan debt. In fact, the trial court addressed Husband's testimony in which Husband informed the court that he owed student loan debt. After expressly addressing Husband's testimony, the trial court clearly stated its determination that no "credible" evidence existed as to the amount of the student loans incurred during the marriage, or what amount was still owed.

---

2. Husband argues that there is evidence in the record to support his claim because he submitted a tax return that listed interest paid on the student loans. However, the tax return did not specify what the amount owed was on the loans, or even if any loans existed at the time of the hearing.

{¶ 53} The trial court made its finding after specifically addressing Husband's testimony, and as such, made an implicit determination that Husband's testimony on the matter was not credible. The finding of no credible evidence is therefore markedly different than making a finding that no evidence, whatsoever, was presented on the matter. In the absence of any credible evidence as to what amount was borrowed or still left owing for student debt incurred during the marriage, the trial court's ruling was not an abuse of discretion. Husband's seventh assignment of error is therefore overruled.

{¶ 54} Assignment of Error No. 8:

{¶ 55} THE TRIAL COURT ERRED IN DETERMINING THAT [HUSBAND'S] TOTAL INCOME FOR THE SPOUSAL SUPPORT PURPOSES WAS $214,212.00 AND IN SETTING SPOUSAL SUPPORT BASED UPON THAT AMOUNT.

{¶ 56} Husband argues in this eighth assignment of error that the trial court incorrectly determined his spousal support obligation.

{¶ 57} Pursuant to R.C. 3105.18(B), a trial court may determine whether to award spousal support and the amount and duration of such an award. A trial court has broad discretion to determine the proper amount and duration of spousal support based on the facts and circumstances of each case, and a trial court's award of spousal support will not be disturbed absent an abuse of discretion. *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 10. An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably. *Miller v. Miller*, 12th Dist. Butler No. CA2001-06-138, 2002-Ohio-3870, ¶ 8.

{¶ 58} A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1). *Kedanis*, 2012-Ohio-3533. According to R.C. 3105.18(C)(1),

in determining whether spousal support is appropriate and

reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 59} After reviewing the record, we find that the trial court did not abuse its discretion in awarding wife $7,000 per month in spousal support.

{¶ 60} Regarding the income of the parties and their earning abilities, the trial court determined, and although heavily disputed by Husband, that Husband earns $214,212 per year. The trial court reached this decision by averaging the last three years of known income and expenses specific to DIC and Husband's employment from other sources. The trial court utilized the gross receipts for DIC for three years, and also accounted for expenses by considering Husband's gross income after expenses had been deducted from the receipts. The trial court also considered Husband's income from reading x-rays for another company.

{¶ 61} While Husband testified that his income had decreased significantly as compared to the three years the trial court used to reach an average salary, the trial court did not find this testimony credible. The trial court noted that it had "expressed concerns that [Husband] was not truthful in his statements about his income," and further made a finding that Husband had failed to complete the most recent tax information, which would have shown any decrease that had truly occurred. The trial court also made a specific finding that Husband "offered no credible evidence that he has suffered a significant reduction in income."

{¶ 62} Instead, the trial court referenced evidence adduced at trial that demonstrated an income drastically different than that claimed by Husband, and also drastically different than that Husband claims on appeal. While Husband argues that his spousal support obligation should be determined solely upon his testimony that he takes home $8,000-$9,000 a month, the trial court had before it specific and accurate documentation as to what Husband actually earned for three years. As such, the trial court properly determined that Husband's salary was $214,212 a year. In contrast, Wife's income was imputed at minimum wage and set at $16,200 per year for spousal support purposes.

{¶ 63} At the time of the hearing, Wife was 57 and did not have any physical, mental, or emotional conditions that impacted the spousal support decision. Husband was 58 and similarly did not have any physical, mental, or emotional conditions that impacted the manner in which the trial court addressed spousal support.

{¶ 64} Despite the high earning capability of Husband, neither he nor Wife had any retirement benefits other than Social Security. The trial court noted that it was a long-term marriage and that neither party had to change employment status since all three children were emancipated.

{¶ 65} The trial court noted that the parties established a "lavish" lifestyle during the marriage. The couple took frequent vacations, had three time-share vacation properties, belonged to several country clubs and the like, and Wife shopped at high-end department stores. The couple also helped pay for their children's expenses such as cars and college educations. Husband also plays golf each Thursday, and has continued to do so even after claiming a severe reduction in his income.

{¶ 66} Regarding the parties' education, Wife has a high school degree while Husband has an advanced degree and is a diplomat of the American Chiropractic Board of Radiology. While Wife hopes to become a psychologist and obtain her PhD, and has completed one year toward her undergraduate degree, the record does not contain evidence on how long it will take Wife to complete her educational goals.

{¶ 67} The trial court considered the assets and liabilities of each party, and that Wife made contributions to the advancement of Husband's career by caring for the children and helping Husband grow his business through marketing and soliciting new clients. The trial court also considered that Wife's caring for the children included extra care and attention because two of the children had mental health issues.

{¶ 68} After considering the tax consequences, the trial court also considered

- 16 -

Husband's ability to pay versus Wife's need for spousal support. In so doing, however, the trial court specifically noted that the law does not require equal incomes for the parties, or even to ensure the standard of living established during the marriage.

{¶ 69} After reviewing the record, we find that the trial court properly weighed the factors and awarded spousal support accordingly. As such, Husband's eighth assignment of error is overruled.

{¶ 70} Assignment of Error No. 9:

{¶ 71} THE COURT ERRED IN REFUSING TO PERMIT JAMES LUEBBE, THE CPA WHO PREPARED [HUSBAND'S] 2014 1040 TAX RETURN AND DIC'S 1120 CORPORATE TAX RETURN TO REVIEW EITHER RETURN IN ORDER TO REFRESH HIS RECOLLECTION WITH RESPECT TO THE PERSONAL EARNINGS AND THE CORPORATE EARNINGS.

{¶ 72} Husband argues in his final assignment of error that the trial court erred in not permitting his witness to review tax returns during the witness' testimony to refresh recollection.

{¶ 73} According to Evid.R. 612, a witness may use a writing to "refresh memory for the purpose of testifying * * *." However,

> the discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. A reviewing court's responsibility is merely to review these rulings for an abuse of discretion. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.

(Internal citations omitted.) *Nakoff v. Fairview Gen. Hosp.,* 75 Ohio St.3d 254, 256 (1996).

{¶ 74} The record indicates that before the hearings began, the trial court ordered

each party to exchange exhibits. However, Husband failed to complete his 2014 tax return in time for the exchange, and only offered a draft of his tax return on the first day of the hearings. The parties were warned by the trial court that failure to exchange exhibits could result in exclusion of the exhibit from trial. When Husband provided his 2014 tax returns on the morning of the hearing, the trial court noted its prior order that all exhibits were to be exchanged no later than two weeks prior to trial, and the trial court was within its discretion to exclude the tax information.

{¶ 75} While Husband argues that he should have been permitted to allow his witness to refresh his recollection by referring to the tax documents, the record is clear that the trial court deemed the tax information inadmissible given Husband's failure to comply with the court order, and the court was within its discretion to regulate its proceeding in this manner. *See Dollries v. Dollries*, 12th Dist. Butler Nos. CA2012-08-167 and CA2012-11-234, 2014-Ohio-1883.

{¶ 76} We are aware that in other instances, courts have permitted witnesses to refresh their recollection using writings that are otherwise inadmissible. *See State v. Osborne*, 5th Dist. Knox No. 2005-CA-09, 2005-Ohio-6497, ¶ 17 (permitting a witness to rely on a hearsay report to refresh her recollection because "a writing used to refresh a witness's recollection is not being offered as substantive evidence, thus appellee was not required to lay the foundation of admissibility").

{¶ 77} However, here, the trial court unambiguously ordered the parties to exchange exhibits two weeks prior to trial so that each party would have the specific information and evidence regarding issues related to Husband's income. Allowing the witness to refresh his recollection and directly testify about the specific numbers included in the inadmissible tax return would have been in direct conflict with the trial court's order. As such, and in this particular circumstance, we cannot say the trial court abused its discretion in not permitting

the witness to refresh his recollection with the inadmissible tax documents.[3]

**{¶ 78}** As noted by the trial court, the information regarding 2014 taxes was available as of December 31, 2014. Husband could have chosen to have the taxes completed within the time frame that exhibits were due to be exchanged. The trial court stated, and we agree, "the fact that it was chosen not to have it prepared, whomever it was that made that decision[,] did not get it prepared until the day before the trial [and it] is not a basis for excusing the noncompliance with the exhibit exchange order."

**{¶ 79}** The trial court did not abuse its discretion by not permitting the witness to refresh his recollection through use of the excluded evidence. To allow otherwise would have been to permit Husband to surreptitiously use information that was ordered to be shared with the other party through exchange of exhibits. The trial court was proper to limit the witness' testimony and to not permit the witness to testify to evidence already deemed inadmissible. As such, Husband's final assignment of error is overruled.

### D. Conclusion

**{¶ 80}** We have sustained several of Husband's assignments of error because the trial court's written decision does not indicate whether the trial court gave any weight to specific evidence in the record, and if not, why. As such, the trial court shall consider and address evidence in the record as previously identified and as pertaining to the issues involved.

**{¶ 81}** Judgment affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.

M. POWELL, P.J., and S. POWELL, J., concur.

---

3. The record indicates that the witness testified from his personal knowledge that Husband's adjusted gross income in 2014 was "around $120,000." The witness only indicated that he did not remember what DIC's "ordinary income" was for 2014, and was only stopped from refreshing his recollection regarding DIC's ordinary income.