[Cite as *Hunley v. Hunley*, 2020-Ohio-5053.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| TINA MARIE HUNLEY, | : | CASE NO. CA2019-12-101 |
| Appellee, | : | O P I N I O N<br>10/26/2020 |
| | : | |
| - vs - | : | |
| | : | |
| THOMAS FRANKLIN HUNLEY, | : | |
| Appellant. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2018DRB00536

Tina Marie Hunley, 1506 Commons Drive, Milford, Ohio 45150, pro se

Robert G. Kelly, 4353 Montgomery Road, Cincinnati, Ohio 45212, for appellant

**M. POWELL, P.J.**

{¶ 1} Appellant, Thomas Hunley ("Husband"), appeals a decision of the Clermont County Court of Common Pleas, Domestic Division, granting him a divorce from appellee, Tina Hunley ("Wife"), dividing the parties' assets, and ordering spousal support.

{¶ 2} Husband and Wife were married October 5, 1991 and have two emancipated children. Wife filed a complaint for divorce on May 10, 2018. Husband answered and filed

a counterclaim for divorce. Although several pretrial hearings and settlement conferences were held, the parties had difficulty agreeing on issues during the course of the litigation. The parties owned a towing business, A&B Towing, and because of the parties' inability to agree on the manner of closing the business, the court appointed a receiver to sell the business assets and dissolve the business.

{¶ 3} A final hearing on the divorce was held before a magistrate on February 11 and 15, 2019. The magistrate issued a decision granting the complaint and counterclaim for divorce and dividing the parties' assets and liabilities. Each party was ordered to pay half of the receiver's fee and Husband was ordered to pay spousal support to Wife. Husband filed objections to the magistrate's decision, and on September 10, 2019 the trial court issued a decision and entry on the objections.

{¶ 4} Husband now appeals the trial court's decision, raising five assignments of error for our review. We begin our discussion with appellant's first and second assignments of error, which both challenge the trial court's decision to award spousal support to Wife.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED IN AN AWARD OF SPOUSAL SUPPORT TO THE APPELLEE WITHOUT EVIDENCE SUPPORTING ALL FACTORS CONTAINED IN R.C. 3105.18(C) ABUSES ITS DISCRETION TO MAKE AN AWARD OF SPOUSAL SUPPORT [SIC].

{¶ 7} Assignment of Error No. 2:

{¶ 8} TRIAL COURT ERRED IN THE USE OF THE FINPLAN TO SET SUPPORT WITHOUT EVIDENCE IN THE RECORD REQUIRED BY R.C. 3105.18(C) TO SUPPORT THE USE OF THE CALCULATIONS USED BY THE TRIAL COURT TO MAKE AN AWARD OF SPOUSAL SUPPORT.

{¶ 9} First, we note that Husband argues in his brief that Wife only requested

temporary spousal support until she could obtain new employment.  However, the record is clear that Husband knew spousal support was an issue.  At the start of the final hearing, the trial court discussed the issues which had been stipulated prior to the hearing and clarified the issues to be decided.[1]  The court indicated "the issue of spousal support is still in dispute" and the parties agreed that it was an issue to be decided.

{¶ 10} In addition, Wife argued in her written closing argument that she should be awarded spousal support.  Husband argued in his closing argument, filed at the same time and not in response to Wife's closing argument, that spousal support should not be awarded.  Accordingly, we find any argument that spousal support was not properly before the court is contrary to the record.

{¶ 11} Pursuant to R.C. 3105.18(B), a trial court has authority to determine whether to award spousal support and to establish the amount and duration of any such award.  A trial court has broad discretion to determine the proper amount and duration of spousal support based on the facts and circumstances of each case, and a trial court's award of spousal support will not be disturbed absent an abuse of discretion.  *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 10.  An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily, or unconscionably.  *Miller v. Miller*, 12th Dist. Butler No. CA2001-06-138, 2002-Ohio-3870, ¶ 8.

{¶ 12} A trial court has a statutory duty to base a spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1).  *Hosler v. Hosler*, 12th Dist. Clermont No. CA2015-10-089, 2016-Ohio-5777, ¶ 57-58: *Kedanis*, 2012-Ohio-3533.  According to

---

1. In addition, throughout his brief, Husband refers to errors in the court's acceptance of stipulations at a pretrial conference which were never formally placed in writing and signed by the parties.  We find no merit to these arguments as the trial court went through the list of proposed stipulations at the start of the final hearing and clarified the parties' positions on each of the issues involved.

R.C. 3105.18(C)(1),

In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support * * * the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 13} Husband does not argue that the trial court failed to consider the factors, but instead argues that the court did not apply the factors correctly to the facts of this case. First, he argues that the trial court failed to consider that the parties earned nearly equal

- 4 -

incomes during the marriage. He contends that the parties' relative earning abilities should have been determined as of October 31, 2018, which was the agreed end date of the marriage. He also argues the court erred in determining that the parties commingled their business and personal expenses.

{¶ 14} In considering this factor, the court indicated that for the last 13 years of the marriage, the parties had been employed by the towing business they owned. Wife performed bookkeeping and data entry while Husband drove trucks and was responsible for upkeep and maintenance. For the last year of their marriage, Husband's and Wife's incomes from the business were nearly equal. However, the towing business was dissolved during the course of the divorce proceedings and both parties obtained other employment. Husband found employment with Prus Contracting and Wife was employed at Cintas.

{¶ 15} The court also looked at Social Security statements in considering earning ability. These statements indicated the parties' earning abilities were approximately equal. However, the court noted that the bulk of Wife's Social Security earnings were based on employment with P&G, prior to the time she began working for the towing business. This employment was no longer available to Wife.

{¶ 16} The court also found that basing that the parties' earning abilities from employment with their towing business was suspect because the parties comingled their business income with their personal expenses. As discussed below, there was evidence that some of the parties' personal expenses were paid through the business. Although the trial court did not articulate the significance of the commingling of the parties' personal expenses with the business expenses, the discussion of this issue reveals an implicit recognition by the trial court that the parties' A&B Towing incomes were understated and a not an accurate reflection of their earning abilities.

{¶ 17} At the time of the hearing, the court calculated Husband's current income at

$73,977.34 and Wife's current income at $42,556.66. Based on the considerations above, the court determined that the best evidence of the parties' earning ability was their current income.

{¶ 18} Ohio courts have determined that earning ability involves both the amount of money a party is capable of earning based on his or her qualifications, as well as the party's ability to obtain such employment. *Schenck v. Schenck*, 12th Dist. Butler No. CA2012-08-150, 2013-Ohio-991, ¶ 17; *Carroll v. Carroll*, 5th Dist. Delaware No. 2004-CAF-05035, 2004-Ohio-6710, ¶ 22.

{¶ 19} We find no error in the trial court's consideration of this factor. Husband and Wife's current employment income, as opposed to their incomes from their personally owned business, provided a reasonable basis for determining their earning abilities. Their current incomes were a reliable indicator of both the amount the parties were capable of earning based on their qualifications and their ability to obtain such employment.

{¶ 20} In addition, we find the trial court did not abuse its discretion in stating that the parties commingled their personal and business incomes. The trial court had the parties' financial information available to review and also heard testimony that Wife cashed out her pension with P&G and used a portion of the retirement money for the business. There was also evidence that the business purchased a camper that was transferred to personal ownership, cell phones used for personal use were paid for by the business and the record suggests that the company account had been used for other personal expenses.

{¶ 21} Husband next argues that the trial court erred in determining the parties' standard of living based on evidence that the value of their home was $148,000 and that they raised two children. However, little evidence was presented on this factor and nothing in the record indicates that the parties held either a low or high standard of living that would be relevant in the consideration of this factor.

{¶ 22} Husband further argues that in considering the extent of parties' education, the trial court erred in considering his Commercial Driver's License ("CDL") and considerable experience driving trucks because it is not difficult to obtain a CDL. In addition, Husband argues that there was no evidence that he has a high school education as does Wife. Again, we find no error in the trial court's consideration of this factor. As the trial court noted, "labeling a CDL as education versus training did not affect the Magistrate's decision and the fact that [Husband] possesses a CDL was properly weighed as one of several factors * * *." In addition, Husband does not explain why the fact that Wife has a high school education while there was no evidence of Husband's education affects the court's discussion or conclusions regarding the parties' relative education.

{¶ 23} Husband also argues that the trial court failed to consider that he will be taxed on the spousal support payments, while Wife will not be taxed on her spousal support income. However, this argument is contrary to the record as the trial court specifically mentioned this fact and performed an equalization analysis which took the tax consequences into account.

{¶ 24} Husband argues that "the most glaring of errors by the magistrate" was reasoning that "while R.C. 3105.18 does not require a spousal support award that provides the parties with an equal standard of living or a standard of living equivalent to that established during the marriage, an 'income equalization' approach does not appear to have resulted in an inappropriate or unreasonable award in this case." Husband argues this language is "cut and paste" from our decision in *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533.

{¶ 25} However, we find no error in the magistrate's use of this correct statement of the law. R.C. 3105.18(C)(1) requires a trial court's award of spousal support to be "appropriate and reasonable." While an income equalization approach is not appropriate

and reasonable in every case, it was not an abuse of discretion to apply the equalization rationale to the facts of this case. As the trial court noted, the parties had a long-term marriage of 27 years. During the marriage, Husband and Wife both owned and were employed by their towing business. As part of the divorce proceedings, the marital home was sold and the parties' assets and liabilities were divided equally.

{¶ 26} Wife had been employed earlier in the marriage, but that employment was no longer available and her pension was cashed out to help with business and household expenses, leaving the parties in similar positions regarding retirement income. Husband was able to find employment in the towing business and his experience with the parties' business aided him in obtaining that employment. Given these facts, the trial court did not err in equalizing the parties' income with an award of spousal support. Moreover, the court limited the award for 10 years and indicated that if circumstances changed, spousal support could be modified at a later date.

{¶ 27} We note Husband makes a number of arguments regarding the lack of evidence on some of the R.C. 3105.18(C)(1) factors and contends that under the trial court's reasoning, a party seeking spousal support need only demonstrate a difference in earning ability to justify an award of spousal support. However, the court considered the evidence presented, which tended to show that after a long-term marriage and division of assets, the parties were in relatively equal positions post-divorce, except for a large income disparity. Moreover, with regard to Husband's arguments that there was a lack of evidence on certain factors, each party has the burden of producing evidence as to any of the R.C. 3105.18(C)(1) factors it wants considered, and must provide facts tending to prove its version of the manner in which such factors should be applied. *Banchefsky v. Banchefsky*, 10th Dist. Franklin No. 13AP-300, 2014-Ohio-899, ¶ 28. Accordingly, while Wife had the burden to establish the facts supporting a spousal support award, Husband also had an

obligation to present the court with any evidence he wanted the court to consider that was relevant to his argument that spousal support should not be awarded.

{¶ 28} Finally, we note that woven throughout Husband's arguments in this assignment of error are statements regarding the "need" or "necessity" for spousal support. However, need is neither the sole nor primary consideration in an award of spousal support. Instead, as we have previously stated, a trial court "must consider each of the factors listed in R.C. 3105.18(C)(1), and while a number of statutory factors relate to the financial condition of the parties, others exist to assist the trial court in achieving an equitable result. Need is but one factor among many that the trial court may consider in awarding reasonable and appropriate spousal support." *Kedanis*, 2012-Ohio-3533 at ¶ 1.

{¶ 29} In his second assignment of error, Husband argues that the trial court erred by using FinPlan software to calculate spousal support obligations. He argues the use of FinPlan software has not been approved by the legislature, was used as a substitute for the R.C. 3105.18(C) factors, and there was not sufficient evidence regarding all of the figures necessary for using FinPlan.

{¶ 30} A FinPlan analysis is a computer-generated calculation that considers the amount of money each spouse contributes to the household and determines the cash each party would have available to them based on different spousal support amounts. *Hoopes v. Hoopes*, 8th Dist. Cuyahoga No. 106855, 2018-Ohio-5232, ¶ 26; *Schuh v. Schuh*, 12th Dist. Butler No. CA2014-01-007, 2014-Ohio-4755, ¶ 14, fn. 1. The FinPlan analysis is often used by trial courts in several appellate districts when determining spousal and/or child support. See *Cramblett v. Cramblett*, 7th Dist. Harrison No. 05 HA 581, 2006-Ohio-4615, ¶ 55. This court has previously noted the use of a FinPlan by trial courts in our district. *Schuh*; *Zimmerman*, 2015-Ohio-1700; *Bixler*, 2017-Ohio-7022.

{¶ 31} In this case, the magistrate completed two FinPlan calculations. One

calculation assumed spousal support paid by Husband as taxable to Wife, and resulted in a calculation of $1170 per month. The other calculation assumed spousal support paid by Husband as taxable to Husband and resulted in a calculation of $910 per month. The magistrate considered these two calculations, and the fact that Wife had requested $1500 a month in spousal support. The magistrate stated it considered the FinPlan calculation in conjunction with the R.C. 3105.18(C) factors, and the $910 figure provided the most equitable result for the parties.

{¶ 32} The trial court noted in its decision on objections that due to a change in federal law, spousal support is no longer deductible to the payor and is no longer taxable income to the payee, therefore the tax consequences were appropriately considered. The court further found that the magistrate's use of the FinPlan calculation was not determinative and was appropriately considered with all the relevant factors.[2]

{¶ 33} Husband also argues that the court used incorrect figures of $46,313 and $46,338 in its FinPlan calculation that do not appear in the record. However, these figures appear in the worksheet calculated with spousal support taxable to Wife, which was not used by the magistrate or the trial court. Moreover, these were not "input" numbers, but the resulting calculation numbers which appear on the line for "After Tax Cash for Living Expenses" and the "Over/Under Budget" line, showing the amount each party would have available after the calculation of spousal support and/or payment of living expenses.

{¶ 34} Husband also argues there was no evidence on expenses to input into the software and the calculations are only as good as the information provided. However, while there are lines on the worksheet for input of each party's monthly budget amount, no

2. In fact, the trial court noted that it would have calculated Husband's current income at a higher amount than the magistrate's calculation, but because Husband was the objecting party, the trial court let the magistrate's decision on the amount of income and spousal support stand without increasing the amount.

evidence was presented to determine an amount for either party. As discussed above, it was each party's responsibility to provide evidence it wanted considered at the hearing. As no evidence was provided on living expenses or budget, it was not error, nor was it necessary to input an amount for living expenses for an accurate calculation. The court did not input amounts for either party, thus leaving the parties' in equal position with regard to living expenses in the calculation.

{¶ 35} With regard to the use of the FinPlan calculation itself, we agree with the 8th District Court of Appeals, that "[w]hile there is no 'mathematical formula' for determining an amount of spousal support to be ordered, that does not mean that the court cannot use mathematical formulas as an aid." *Hoopes*, 2018-Ohio-5232 at ¶ 26. In this case, the magistrate indicated that the FinPlan analysis was considered and was an aid in determining an amount, but was not a controlling factor in determining the spousal support obligation. Because the court used the FinPlan analysis in conjunction with a thorough application of the statutory factors when determining the amount of spousal support, we find no error in this determination.

{¶ 36} In conclusion, we find no error in the trial court's determination of spousal support, nor any error in the court's consideration of the FinPlan calculation as an aid in determining the amount of spousal support. Therefore, Husband's first and second assignments of error are overruled.

{¶ 37} Assignment of Error No. 3:

{¶ 38} TRIAL COURT ERRED IN FAILING TO DIVIDE THE VALUE OF THE APPELLEE'S MOTOR VEHICLE WHEN THE APPELLANT PRESENTED EVIDENCE OF THE VALUE OF THE VEHICLE.

{¶ 39} The magistrate found that at the formal pretrial, the parties had agreed that Wife would keep her 2013 Hyundai Sonata and Husband would keep his 2003 Ford

Expedition. There was no debt on either vehicle and while the parties argued there was a difference in value, they could not agree on the amount. Ultimately, at the pretrial, the parties agreed that Kelly Blue Book ("KBB") value could be used to determine the vehicles' value.

{¶ 40} At the start of the final hearing, while clarifying the issues, the magistrate discussed the fact that the parties were to keep their vehicles and indicated that it expected there would be evidence submitted on the value of the vehicles to make a determination on the difference in value. Husband submitted KBB value for Wife's Sonata, but neither party submitted KBB for Husband's Expedition. Because there was insufficient evidence to determine the difference in value, the court ordered no reimbursement.

{¶ 41} Husband now argues that the trial court erred in failing to divide the value of Wife's vehicle because he submitted evidence that the value of her vehicle was $3,520.50. He argues Wife is responsible for preparing her exhibits and essentially the court punished him because Wife failed to present evidence.

{¶ 42} However, the agreement between the parties was that they would keep their respective vehicles and the issue of reimbursement for any difference in value would be determined by the trial court based on evidence of KBB submitted at the hearing. Nothing indicates that it was Wife's responsibility to submit evidence on the value of either vehicle. Presumably, this issue was of little importance to Wife and she was willing to abide by whatever the trial court ordered. If Husband wanted an award based on the difference, it was incumbent on him to submit all of the necessary documentation.

{¶ 43} A trial court can only make decisions based on the evidence presented. *Roberts v. Roberts*, 10th Dist. Franklin No. 08AP-27, 2008-Ohio-6121, ¶ 21. "In a divorce case, as in any other case, it is the responsibility of the parties to put forth the evidence they believe is relevant and necessary for a just decision. Each party tries his own case, and

the court reaches a decision based on the evidence that the parties have presented." *Walls v. Walls*, 4th Dist. Highland No. 94 CA 849, 1995 Ohio App. LEXIS 2005, at *14 (May 4, 1995). See also *McKiddy v. McKiddy*, 1st Dist. Hamilton No. C-170346, 2018 Ohio App. LEXIS 2811, at *6 (June 29, 2018).

{¶ 44} In this case, the trial court decided the issue based on the evidence before it as presented by the parties. Husband elected to only present evidence of the value of Wife's vehicle, and not the difference in value between the vehicles. Accordingly, because the stipulation was for each party to keep his or her vehicle, with an adjustment for difference in value, the trial court was not required to award Husband half of the value of Wife's vehicle when there was insufficient evidence of a difference in value. Husband's third assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} TRIAL COURT ERRED IN FAILING TO REQUIRE THE APPELLEE TO PAY THE COST OF THE RECEIVER.

{¶ 47} As mentioned above, the parties owned a towing business, A&B Towing. After the parties separated, it became apparent that the business could not continue to operate due to the breakdown of communication and an inability of the parties to cooperate in the business. In attempting to dissolve the business, the parties had different ideas on the sale of business assets. Husband used his connections in the towing business to negotiate offers for the sale of some of the equipment. Wife wanted to list the items for sale in a more neutral environment, such as listing at auctions and on the internet. When the parties' inability to work together and agree on the manner of closing the business became apparent, Husband filed a motion asking the court to appoint a receiver to dissolve the business.

{¶ 48} The magistrate found a receiver was necessary due to a lack of trust between

the parties and therefore appointed a receiver to complete the dissolution of the business. At the final hearing, the receiver presented a bill for $14,000 his services, which the parties agreed was reasonable. The magistrate divided the cost of the receiver's services equally between the parties. Husband objected, arguing that it was Wife's inability to agree that created the need for appointment of a receiver. The trial court, however, found that appointment of the receiver was necessitated by the conduct of both parties. The court indicated that it was "evident from these proceedings and the exorbitant amount of filings that there has been disagreement and resistance at nearly every turn by both parties."

{¶ 49} After our review of the record below, including the various filings by the parties and the transcripts in the record, we find no error in the trial court's determination. We agree with the trial court that "the appointment of the receiver was needed and that both parties are responsible for that necessity." Husband's fourth assignment of error is overruled.

{¶ 50} Assignment of Error No. 5:

{¶ 51} TRIAL COURT ERRED WHEN IT FAILED TO STRIKE THE CLOSING ARGUMENT OF THE APPELLEE.

{¶ 52} In his fifth assignment of error, Husband argues that the trial court erred by accepting Wife's ten-page closing argument because the magistrate limited the parties to only five pages. Husband argues "The closing argument is meant to be a summary of the facts as interpreted by the parties and to cast the facts in the best light to the parties' position. The facts cannot be turned on there [sic] head in the closing argument. The reason the Appellee's closing argument should be stricken is it is not supported by the record or a good faith extension of the record. Appellee's closing argument is a misstatement of the record."

{¶ 53} At the conclusion of the final divorce hearing, the magistrate asked the parties for closing arguments. Wife's counsel requested that the parties be allowed to file written

- 14 -

closing arguments and the magistrate agreed to the request. The magistrate and the parties then discussed the timing of the written closing arguments. Wife's counsel requested a week, while Husband's counsel indicated he had three trials coming up. The magistrate then stated, "Well, how much time do you need? Now, I don't want a . . . I don't want a book. I want a maximum of five pages, double-spaced, I don't want a book." The parties then discussed other details, such as formatting, timing and manner of filing. At the end of the discussion, the court indicated it would send a briefing order. However, the magistrate's "Order for Written Closing Arguments," issued February 21, 2019, stated only "Both parties' attorneys are ordered to submit written closing arguments no later than 4:00 on Friday, March 1, 2019."

{¶ 54} After Wife filed her ten-page closing argument, Husband moved to strike Wife's closing argument and for attorney fees. Husband argued that Wife's closing argument exceeded the page limit and included arguments not supported by the record, referenced exhibits not admitted and documents not presented at trial, and was "riddled with untruths." In this 12-page motion, Husband refuted, in detail, each of the arguments Wife made in her closing argument with which he disagreed.

{¶ 55} The magistrate addressed the motion in its final order on divorce. The magistrate discussed the facts surrounding the request for written closing arguments, including the fact that the magistrate had told the parties that the arguments should not exceed five pages. The magistrate further indicated, however, that the order it issued did not include a page limitation. The magistrate found that a court speaks through its journal, and because the written order did not set forth a page limit, Wife's closing argument would not be stricken. However, the magistrate found that the 85 pages of documents attached to the closing argument would not be considered because they were not evidence. The magistrate further acknowledged that while the closing argument contained misstatements,

the magistrate was not misled by them. Therefore, the motion to strike was denied.[3]

{¶ 56} Husband filed an objection to the magistrate's decision on this issue. The trial court agreed with the magistrate that although there were statements at the hearing regarding the permissible length of closing arguments, the court speaks though its journal, which did not include a page limitation. The trial court therefore found the motion to strike was appropriately denied. The court further found that it was up to the court to determine the weight of the evidence.

{¶ 57} We find no error in the trial court's decision on this issue. Counsel has broad latitude in closing argument and the bounds of permissible argument is left to the trial court's sound discretion. *Pang v. Minch*, 53 Ohio St.3d 186, (1990); *Premier Therapy, LLC v. Childs*, 2016-Ohio-7934, 75 N.E.3d 692, ¶ 154 (7th Dist.). A court speaks only through its journal and an order is effective only when it has been journalized, that is, when it has been reduced to writing, signed by a judge, and filed with the clerk so that it may become a part of the permanent record of the court. *State ex rel. Fraley v. Ohio Dept. of Rehab. & Correction*, Slip Opinion No. 2020-Ohio-4410, ¶ 17; *Bokeno v. Bokeno*, 12th Dist. Butler No. CA2001-07-170, 2002-Ohio-3979, ¶ 17.

{¶ 58} Moreover, it is well established that closing arguments are not evidence. *Nagel v. Nagel*, 9th Dist. Lorain No. 09CA009704, 2010-Ohio-3942, ¶ 16; *Ernsberger v. Ernsberger*, 8th Dist. Cuyahoga No. 100675, 2014-Ohio-4470, ¶ 35. The magistrate indicated it was not misled by the arguments in the closing argument and the trial court agreed, finding it was up to the magistrate to weigh the evidence.

{¶ 59} Most critically, we note that even if we had determined that it was error to allow Wife's closing argument, Husband has not established any prejudice from the court's

---

3. The magistrate, however, found that because of "the needless filing of numerous documents" with the closing argument, the parties owed additional court costs and ordered Wife to pay any remaining court costs.

decision. The magistrate carefully examined the evidence and issued orders based on the evidence presented. Husband cannot establish that any of the magistrate's decisions were made as a result of the additional pages of closing argument.

{¶ 60} It is fundamental appellate law that "[a]n error in a proceeding is not reversible error unless it affects the substantial rights of the complaining party." *Harman v. Kelley* (1846), 14 Ohio 502; *Baker v. Admrs. of Lawrence* (1875), 27 Ohio St. 418. It is axiomatic that an error must be prejudicial to warrant a reversal of a judgment based upon that error. *Ohio Life Ins. and Trust Co. v. James Goodin and Others* (1860), 10 Ohio St. 557, paragraph one of the syllabus; *Smith v. Flesher* (1967), 12 Ohio St. 2d 107. "The existence of error does not necessarily require a reversal unless such error is prejudicial to the complaining party. The error must affect the substantial rights of the complaining party, or substantial justice must not have been done." *Stone v. Internatl. Paper Co.*, 12th Dist. Clinton No. CA92-02-005, 1992 Ohio App. LEXIS 5092, at *15 (Oct. 5, 1992), quoting *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 44. An error is not prejudicial if its "avoidance would not have changed the result of the proceedings." *Goins v. Oliverio*, 9th Dist. Summit No. 25041, 2010-Ohio-3849, ¶ 10; *Shelton v. Morgerson*, 12th Dist. Preble No. CA87-05-014, 1988 Ohio App. LEXIS 164, at *7 (Jan. 25, 1988).

{¶ 61} Husband has not established any prejudicial error from the trial court's decision regarding the length of closing arguments. The magistrate indicated that it wanted closing arguments to "succinctly tell me what you want on behalf of your client and why you believe your client is entitled to it." The magistrate expressly stated it did not consider any of the discussion in Wife's closing argument that was based on evidence not presented at the hearing and it struck exhibits that were attached. The court's decision was based on the evidence before it and there is absolutely no indication that the length of Wife's closing argument had any effect on the court's decision. Husband's fifth assignment of error is

overruled.

{¶ 62} Judgment affirmed.

S. POWELL, J., concurs.

PIPER, J., concurs in part and dissents in part.

**PIPER, J., concurring in part and dissenting in part.**

{¶ 63} I agree with my colleagues in affirming the trial court regarding the third and fourth assignments of error.  However, in considering the first, second, and fifth assignments of error, I would reverse and remand as to the issues involved in the awarding of spousal support.  Thus, I concur in part, and dissent in part, from the majority opinion.

FIFTH ASSIGNMENT OF ERROR

<u>Right to Protect the Record from Documents Not in Evidence</u>
<u>and Right to Fair Play</u>

{¶ 64} In the fifth assignment of error, appellant complains about the unfairness of appellee receiving more than twice the number of pages in which to make a closing argument despite the court earlier directing both parties to only submit five pages of argument.  In addition to exceeding five pages, appellee's counsel improperly attached voluminous documents outside the record in support of appellee's arguments.  Both the magistrate and the trial court opined that because the magistrate was not "misled" by appellee's counsel, appellant's motion to strike the excessive argument with the improper attachments became "moot."

{¶ 65} In declining to strike appellee's excessive argument with improper attachments, the trial court emphasized the magistrate did not review the attachments in reaching its decision.  However, the magistrate, within its decision, does not indicate the attachments went unreviewed.  The magistrate only states he was not successfully "misled."

Such a proclamation, however, does not render appellant's motion to strike "moot," and suggests the magistrate reviewed the attached documents but subjectively believed he was not "misled." Regardless, appellant was prejudiced by appellee having an unfair advantage of twice the number of pages for arguments that were ultimately successful. Appellee was also permitted to attach documents which were never properly presented as evidence in advancing appellee's arguments.

{¶ 66} As officers of the court, both counsel for appellant and appellee received an oral directive from the magistrate not to exceed five pages when submitting written arguments. Both the magistrate and trial court determined that because the page limitation orally given at the hearing was not repeated in writing it meant the magistrate impliedly authorized unlimited pages. Yet, the follow-up entry did not address the length of closing arguments.

{¶ 67} While it is accurate that a court speaks through its entries, the entry subsequently issued after the magistrate gave its directive did not "speak" to changing the page limitation. It would defy common sense for one to believe the magistrate went from a five-page limitation and instead authorized unlimited pages merely by the entry's silence. The entry simply did not broach the subject and the court's directive of a five-page limitation went unchanged.[4]

{¶ 68} The entry did not alter or amend the magistrate's previous directive issued at the close of evidence. If the entry was meant to countermand or revoke the previous directive, due process would require the entry expressly say so in order to give fair notice to both parties. "The meaning of fundamental fairness is as opaque as its importance is lofty." *State v. Corthell*, 3d Dist. Seneca No. 13-06-58, 2007-Ohio-4742, ¶ 12 (discussing

---

4. The oral discussion at the hearing reveals the magistrate was emphatic he did not "want a book," he wanted "a maximum of five pages" per side.

due process in judicial proceedings). *See also Hinkle v. Cleveland Clinic Found.*, 159 Ohio App.3d 351, 2004-Ohio-6853 (8th Dist.) (reasoning that fairness requires applying the rules of evidence so that the parties are treated similarly).

{¶ 69} Parity and the appearance of impartiality between litigants is revered by the judiciary in all proceedings. The probity of these proceedings must be conducted with neutrality and a level playing field so that a party cannot find harbor in believing an unfair process led to an unfavorable result. Law students are taught that due process is undefined and that due process is fair process and fair process is fair play. Appellant's counsel had no notice that the five-page limitation had been removed. One would wonder how appellee's counsel determined he was exempt from the five-page restriction and was free to attach voluminous documents not in evidence.

{¶ 70} Likewise, one party cannot be penalized for following a court directive, while another party is simultaneously rewarded for ignoring that same directive. Clearly, it is improper for counsel to advance arguments in closing that are not supported by the evidence. *Premier Therapy, LLC. v. Childs*, 7th Dist. Columbiana Nos. 14 CO 008 and 15 CO 0028, 2016-Ohio-7934, ¶ 154. The unfairness exercised by appellee's counsel must not be rewarded. An improper closing argument with improper attachments is objectionable and appellant's motion to strike should have been granted.

{¶ 71} In not striking the improper and excessive argument, appellee was unfairly given the opportunity to advance her arguments. Appellant had a substantial right to protect the record and had a right to the same opportunity to advance arguments. Such even handedness equates to fair play, a fair process, and due process. In not striking documents not previously entered into evidence, the court permitted such documents to remain. Yet, appellant's motion to strike was entirely proper and timely. Evid. R.103(A)(1).

{¶ 72} While closing arguments are not evidence, they are summaries of the

evidence designed to persuade. One party is simply not entitled to the advantage of receiving a closing argument twice the length of the other party. This is particularly true when there was an *express directive* giving both parties *equal* time for their closing argument. The prejudice here is that appellee had more than twice the argument appellee was permitted and remained allowed to attach voluminous documents which were outside the record. This challenges the integrity of the proceedings. While the majority suggests there is no prejudice requiring reversal, the error becomes even more poignant when considering the first and second assignments of error.

## FIRST AND SECOND ASSIGNMENTS OF ERROR

### The Need for R.C. 3105.18(C)(1)(a-n)
### Evidence and Analysis to Support FinPlan Conclusions

{¶ 73} In appellant's first assignment of error, it is argued there was a significant absence of evidence addressing the fourteen factors found in R.C. 3105.18(C)(1)(a-n), which are used to determine whether spousal support should be awarded, and if so, in what amount and for what duration. The party requesting spousal support presents evidence it wants the trial court to consider. *Rees v. Rees*, 3rd Dist. Logan No. 8-11-7, 2012-Ohio-2129, ¶ 11. In the absence of evidence addressing the statutory factors, the non-requesting party would have no obligation to present any testimony as to the factors. *Id*.

{¶ 74} In the second assignment of error, appellant argues that it was improper for the trial court to make an award of spousal support using a FinPlan mathematical formula without evidence in the record to support the FinPlan conclusions.

{¶ 75} The two assignments of error are not unrelated and for the ease of discussion they are best discussed simultaneously.

{¶ 76} R.C. 3105.18(A) authorizes the trial court to award reasonable spousal support that is for "both sustenance and for support." When determining whether spousal

support is appropriate and reasonable, the trial court must consider the factors set forth in R.C. 3105.18(C)(1)(a)-(n).  The 14 factors provided in R.C. 3105.18(C)(1) include:

(a) The income of the parties, from all sources, including, but not limited to, income derived from the property divided, disbursed, or distributed under property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefit of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 77} It is not necessary that the trial court expressly comment on each factor, but

it must give an analysis in "sufficient detail" enabling a reviewing court to determine that the award was fair, equitable, and in accordance with the law. *Bixler v. Bixler*, 12th Dist. Clermont No. CA2016-12-081, 2017-Ohio-7022, ¶ 17, quoting *Campbell v. Campbell*, 12th Dist. Warren No. CA2009-04-039, 2009-Ohio-6238, ¶ 22. To be "in accordance with the law" the trial court must in its analysis apply the evidence deduced at trial to the factors contained in R.C. 3105.18(C)(1)(a)-(n). *Bixler* at ¶ 17. Judge Melody Stewart, now Justice Stewart, upheld a magistrate's use of a FinPlan "in conjunction with a *thorough application*" of statutory factors. *Hoopes v. Hoopes*, 8th Dist. Cuyahoga No. 106855, 2018-Ohio-5232, ¶ 26. (Emphasis added.) A FinPlan's mathematical formula is merely an aid in determining the spousal support to be awarded. *Id.*

{¶ 78} We have upheld the use of FinPlan application where there was "sufficient detail" and an "exhaustive analysis" of the evidence applicable to the factors in R.C. 3105.18(C)(1)(a)-(n). *Schuh v. Schuh*, 12th Dist. Butler No. CA2014-01-007, 2014-Ohio-4755 ¶ 12, 23. The goal is to reach an equitable result which is not achieved by reducing the process to a mathematical formula. *Kunkle v Kunkle*, 41 Ohio St.3d 64, 70 (1990). A FinPlan application must be in context of the evidence going to the relevant factors. This is demonstrated when the trial court provides sufficient detail. *Kaletta v Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, ¶ 22 (remanding for the trial court to demonstrate it considered the evidence relevant to the statutory factors). *See* e.g. *Bixler*, *Campbell*, and *Schuh*.

{¶ 79} In the matter sub judice, despite making exclusions, the trial court wrestled with the lack of evidence. It repeatedly noted that there was "little evidence," and in most instances "no evidence," regarding the factors. The trial court attempted to extrapolate from the little information provided. It was no fault of the trial court that its analysis moving forward was running on empty. The trial court recited the factors, one by one, and drew

conclusions as the majority points out, but the trial court had very little information for a detailed analysis. Merely listing the factors to note what little or no evidence was presented is not an analysis that provides for review.

{¶ 80} A FinPlan application is meaningless without the evidence or testimony necessary to analyze and apply the various factors. Many Ohio courts have noted that a FinPlan application is not per se objectionable, yet there must be evidence submitted for the trial court to articulate an analysis producing the equity a FinPlan assists in bringing to the parties. When a party requesting spousal support fails to present sufficient evidence for the court to analyze, the use of a FinPlan remains unsupported.

{¶ 81} The trial court attempted to rely on a narrow reading of *Bixler,* yet the circumstances in *Bixler* are vastly different than those present in our current situation. A comprehensive reading of *Bixler* reveals evidence is necessary as to the statutory factors to support FinPlan conclusions. In determining the duration and amount of spousal support to be awarded, the trial court needs relevant information for its analysis even if ultimately making use of a FinPlan.

{¶ 82} *Bixler* involved testimony regarding the parties' respective monthly expenses and liabilities. In our case, the trial court found that appellee presented "no evidence" of current monthly expenses or liabilities. In *Bixler*, there was also detailed testimony regarding the standard of living before and after termination of the marriage. Here, there was "no evidence" regarding appellee's standard of living either before or after the marriage. After the marriage terminated, both parties had increased their respective incomes. Yet, there was *no testimony* to determine what standard of living or what expenses or liabilities the parties had since the marriage had terminated.[5] Additionally, we have no information

---

5. This is significant because the court used post-marriage income in its determination to award spousal support in the amount and for the duration that it did.

about the physical or health conditions of the parties, nor do we know their employment capabilities or educational achievements that might support employment opportunities or higher living standards. Furthermore, pursuant to the catch-all factor which allows for equitable considerations, the trial court noted there was "no evidence" presented. Without pertinent and relevant information as to the various factors involved, it becomes impossible to review the reasonableness of the spousal support award. There was simply very little substantive evidence resulting in a bare bones analysis leading to FinPlan mathematical conclusions.

{¶ 83} The trial court rightly determined it was a long-term marriage and noted that the post-marriage income for both parties was higher than during the marriage. These two factors may require an award of spousal support. However, for the amount and duration that was ordered, additional testimony or evidence pertinent to the factors must be applied to determine such amount and duration was reasonable and equitable. *Kedanis v. Kedanis*, 12th Dist. Butler No CA2012-01-015, 2012-Ohio-3533, ¶ 15 (an equalization approach can be reasonable and appropriate when assessing, among other pertinent factors, their respective standards of living and financial conditions of the parties).

{¶ 84} Without that evidence, it is impossible to conduct a meaningful review. Therefore, I agree with those courts that reverse and remand in the absence of necessary information to support an analysis applying the factors in R.C. 3105.1(A)(C)(1). *Shetler v. Shetler*, 5th Dist. Stark No. 2012-CA-00126, 2013-Ohio-5860, ¶ 29-30; and *Gockstetter v. Gockstetter*, 6th Dist. Erie No. E-98-078, 2000 Ohio App. LEXIS 2806 (June 23, 2000). The use of a FinPlan does not substitute an application of evidence and an analysis that demonstrates that application. The legislature cannot be side stepped by a FinPlan.

CONCLUSION

{¶ 85} A shallow presentation of testimony with insufficient evidentiary value must

neither work an injustice on one party or the other nor shall it fall as a burdensome task upon the trial court to rectify. Spousal support in a long-term marriage would appear reasonable and appropriate in the circumstances presented. Yet, applying the evidence as to all the relevant factors in R.C. 3105.18(C)(1)(a)-(n) is what makes an equitable result more likely than not. When considering the amount and duration of spousal support, the factual information and circumstances of the parties becomes imperative. I would therefore reverse and remand for a hearing so that testimony and evidence can be presented for the trial court to make its detailed analysis as relative to the pertinent factors.